15 U.S. 161
 2 Wheat. 161
 4 L.Ed. 209
 The FORTUNA—Krause, et al. Claimants.
 March 17, 1817
 
 APPEAL from the circuit court for the district of North Carolina.
 This ship, sailing under Russian colours, left Riga on the 2d of September, 1813, for London, where she arrived; and from thence sailed on the 18th of November, 1813, in ballast, on a voyage to the West-Indies; took a British convoy at Portsmouth, in England, and proceeded with it to Barbadoes, and thence to Jamaica. From thence she sailed to the Havanna, where she arrived on the 12th of February, 1814; took in a cargo of the produce of Cuba, and left the port of the Havanna on the 25th March, 1814, under protection of a British convoy bound to Bermuda. After parting with the convoy, she was captured on the 19th of April, 1814, in N. lat. 38, W. long. 60, by the private armed schooner Roger, and brought into Wilmington, N. C., for adjudication. The master and all the crew, except the mate and two seamen, were taken out and kept on board the privateer until the 14th of August, when they were sent in to be examined.
 A claim was interposed by the master, for the ship, as the property of Martin Krause, of Riga, one of the house of trade of M. & I. Krause, of that place for 1520 boxes of sugar and 144 quintals of Campeachy wood, as the property of M. & I. Krause. For 160 boxes of sugar, as the property of J. F. Muhlenbruck, as the master understood, 'a native of Germany, and of late usual abode at Hamburg,' and who went out in the vessel, and purchased and shipped the whole of the cargo. And for small portions of the cargo, as the property of the master, and of a Swedish captain, Steinmeitz.
 There were found on board a certificate of the built of the ship in Finland; a passport or sea-brief to proceed to London, granted at Riga by the harbour master and commander of that place; a bill of sale of the ship from P. A. Severnon & Son, of Riga, to Martin Krause; and certificates of naturalization of the crew. The cargo was documented in the usual formal manner.
 The prize-master, in his affidavit on delivering up the ship's papers, sworn to on the 7th of July, 1814, states, 'that the said papers were found in said ship at three different periods, and that on coming into his possession, or on discovery thereof, he proceeded with them forthwith, and without delay, to the admiralty office, &c., and that the last parcel of papers were, on the 8th of June last, being a considerable time after the arrival of the said ship, found concealed in a tin box, carefully let into an old piece of timber, to wit, part of the frame or belfrey of a vessel, by means of a mortice hole, which said mortice hole was covered with a piece of wood, in a way calculated to elude observation, and which said piece of timber was stowed away among the ship's firewood,' &c. Certain papers were also found in the master's trunk after the ship's arrival.
 In his examination, on the standing interrogatories, the master swore that he was employed and appointed by a Mr. Hoffengartner, who gave him possession of the vessel in London, in 1812; that the said Hoffengartner was then travelling; and died about March, 1813; but his place of abode, birth, and country, the master did not know. That Messrs. Bennet & Co., of London, gave him his instructions, and informed him that Martin Krause had directed them to fit out the ship and order her to the Havanna. That the ship had before gone by some other name, which he did not recollect. That a bill of sale of the ship was made to Martin Krause, by the person from whom the said Krause purchased, but whose name he did not recollect, nor the time when it was made, nor in the presence of what witnesses; and there was no engagement different from, or in addition to, the bill of sale. He assigned as his reasons for placing the papers in the piece of wood, that they were partly papers not belonging to the vessel, and partly private letters, and he did not wish to have them mixed with the ship's papers, as it might possibly create confusion, and that they might be put aside when boarded by any private armed vessels, and, if there should be a necessity, produced when called for.
 The ship and cargo were condemned in the courts below, and the cause was brought by appeal to this court.
 Feb. 15th.
 Mr. Gaston, for the appellants and claimants, argued, that the character of the vessel and cargo, as manifested by the original evidence, apart from the papers found concealed on board, was strictly neutral, and entitled the claimants to restitution; and that the national character was not altered by the papers thus found. That a concealment of papers is not cause of condemnation, when accounted for on reasonable grounds; and that even actual spoliation of papers is not conclusive, but only presumptive evidence of hostile interests. Presumptio stabitur donec contraria probetur, i. e. until the concealed papers are produced; the case of the Concordiaa shows in what light the wise man, who presides in the English court of admiralty (although in general, sufficiently austere towards neutrals) considered a temporary concealment even of material papers; that he viewed it not as authorizing farther proof merely, but as entitling the party to immediate restitution. Still less is the master's fault, in this respect, to be visited, vindictively, on the owners, where there has been such gross misconduct on the part of the captors as in the present instance. They have violated the positive text of the president's instructions in taking the master, and a great majority of the crew out of the captured vessel, and keeping them on board the privateer, and in not delivering up the papers found on board until long after the vessel had reached the port where she was carried for adjudication.b The court can only animadvert upon such
 
 
 a
 1 Rob. 102, 103.
 
 
 b
 See the President's Instructions. APPENDIX, Note II. misconduct by depriving the captors of their spoil: at all events, this, together with the other circumstances of the case, entitles the claimants to the privilege of farther proof.
 
 
 c
 The Eenroom, 2 Rob. 1. The Calypso, Ib. 154. The Rosalie and Betty, Ib. 343. The Odin, 1 Rob. 248. The Vigilantia, Ib. 6, 7.
 
 
 d
 1 Marshall on Ins. 406. a, Condy's ed.
 
 
 e
 The Juno, 2 Rob. 101. The Odin, 1 Rob. 248. the privilege of honest ignorance, mistake, or negligence.f In such a case of concealment as the present, where the papers are extracted from the latebrae of the ship, there can be no certainty but what some of the documents are still suppressed, or have been spoliated; and the reason of the rule which refuses farther proof applies with full force where the parties have shown themselves, by their misconduct, unfit to be trusted with an order for farther proof. The case is infected throughout with falsehood, and is analogous to that of the St. Nicholas, in all the machinery of fraud.g
 
 
 f
 Wheat. Appendix, Note II, p. 504, and the authorities there cited. Livingston et.al. v. The Maryland Ins. Co., 7 Cranch, 545.
 
 
 g
 1 Wheat. 417. may entitle the insured to abandon. But the law of nations only requires a neutral ship to be navigated with such documents as are required by the local law of the country to which she belongs, and the property of the cargo to be proved by the usual papers which the general usage of the commercial world has made necessary: even the want of these is not a substantive ground of condemnation, but may be explained by the claimants, if susceptible of explanation. But the burthen of proof is not thrown on them in the case of a lawful voyage in a ship, and with a cargo, documented as neutral. In such a case every favourable presumption is to be indulged; and even the unfavourable presumption arising from spoliation, or concealment of papers, ceases when the nature of the documents destroyed or concealed is made to appear. There may be a concealment in fact, which is not a concealment in law. There may be an innocent concealment; and here is no evidence of a fraudulent concealment, or of spoliation. The papers, when discovered, must answer for themselves. If an immoral play, or a meretricious novel had been found concealed on board, it would indeed have argued bad taste and want of morals in the master, but could no more enure to condemnation than a volume of Plutarch or the 'British Spy.'
 
 
 Mr. Wirt, contra, accounted for taking out the captured crew by the circumstance of the weakness of the privateer. The instructions require, not merely that the captors should send in the master and one or more of the principal persons belonging to the captured vessel for examination on the standing interrogatories, but they imply that the master should deliver up all papers; and his failing, in this case, to deliver up all the documents which were necessary to support the national character of the vessel and cargo, is sufficient to excuse the captors for a slight departure from the letter of instructions, whose spirit they have obeyed. But supposing it to be an irregularity, it is now become immaterial; and the only questions are, whether the property appears to be hostile on the original evidence; or, if its character be doubtful, whether the claimants have forfeited their privilege of farther proof. The rules of prize practice are, that if the captured property appears to be hostile, condemnation follows; but if it does not appear to be clearly neutral, restitution does not follow of course, but the burthen of proof is thrown upon the claimants to show it to be entitled to restitution: if they are unable to do this from the original evidence, farther proof may be ordered, unless excluded by the misconduct of the claimants. It is not sufficient that the ship and cargo are documented by formal papers; the other circumstances, and the nature of the case, may show that these are merely the cloaks of fraud; and the necessary simplicity of the prize proceedings forbids the court from seeking for evidence aliunde, unless there be reasonable grounds for doubt. Still less can a resort be had to extraneous testimony where the documents are neither regular nor supported by the examinations in preparatorio. Nor is a formal support of the documents by oaths sufficient, if the oral testimony is outweighed by the circumstances of the transaction.c A fraudulent concealment of papers is a substantive ground of condemnation. Neutrals are bound to show belligerant cruisers all their papers; and a court of prize is authorized to presume the worst, if there be two constructions, one of which accounts for the concealment, and the other does not. The case is deficient in nearly every one of the documents which the writers on public law, and the law of insurance require to show the neutral character of the ship and cargo.d Mere formal papers are a dead letter, unless supported by oral testimony.e But the master is an insufficient witness to support even the imperfect documents found on board this ship, as his testimony is falsified, and is nullified by his fraudulent concealment of the papers. Nor is this a case of farther proof, which is
 Mr. Hopkinson, in reply. The instructions are imperative, and cannot be dispensed with by the captors. The excuse for the depriving the captured vessel of her crew is unfounded in fact; and, if true, is not sufficient to justify the captors, because the master might have been left, and there is no authority to support the supposed discretion of the captors in this particular. The dictum of Marshall, as to the papers which ought to be found on board a neutral ship, is not in point; he shows, in a treatise on a branch of municipal law, what papers the insured are bound to have on board, to prevent not merely condemnation but even detention, capture, or carrying in for adjudication; all of which are perils within the policy, and, under some circumstances,
 Mr. Justice JOHNSON delivered the opinion of the court, ordering this cause to farther proof, open to both parties.
 
 
 1
 ORDER.—It is ordered, in this cause, that both parties have liberty to produce farther proof; that all examinations of witnesses be taken under commission according to the rule of this court; that original letters and documents be, in all cases, produced, or a sufficient reason assigned for not producing such originals. And that the captors have leave to inspect letter books and books of account relative to this adventure wherever they require it.