WALTER K. DEBNAM v. SOUTHERN BELL TELEPHONE AND
TELEGRAPH COMPANY.

(Decided June 7, 1900.)

*Domestication of Foreign Corporations—"Diversity of Citizenship"—Acts 1899, Chapter 62, Ratified February 10, 1899—Legislative Intent—Legal Effect.*

1. The legislative intent of the act, entitled "An act to provide a manner in which foreign corporations may become domestic corporations" (Acts 1899, chap. 62), was to require all such corporations to become domestic corporations either by reincorporation or adoption. Its legal effect was to charter and not to license.

2. One result from the process of domestication is, that the corporation is not entitled to remove the cause, when sued in the State courts, to a court of the United States, on the ground of diverse State citizenship.

CIVIL ACTION for damages to the amount of $20,000 for personal injury resulting from alleged negligence of defendant company by reason of one of its employees while at work carelessly dropping an iron instrument upon plaintiff's head, in the public street of Durham, May 24, 1899. Action was commenced June 3, 1899, in the Superior Court of DURHAM County, and was heard before *Brown, J.,* at October Term, 1899, upon petition of defendant for removal to Circuit Court of United States for Eastern District of North Carolina, for that the plaintiff was a citizen and resident of North Carolina, and the defendant was a corporation under and by virtue of the laws of the State of New York, and that none of its corporators or officers were citizens or residents of North Carolina, and that no citizen of this State ever had an interest in said corporation; that while during 1899, it was forced, for the protection of its property in this State, to file its charter

under the direction of the Act of February 10, 1899, it submits that the filing of its charter as aforesaid, did not operate to make it a citizen of North Carolina.

His Honor adjudged that defendant had become a corporation of the State of North Carolina, and denied the petition for removal.

Defendant excepted, and appealed to the Supreme Court.

*Mr. Robert C. Strong,* for appellant.
*Messrs. Boone, Bryant & Biggs,* for appellee.

DOUGLAS, J. This is an action brought to recover damages sustained by the plaintiff through the alleged negligence of the defendant. In apt time, and without filing an answer, the defendant filed its petition for removal to the Circuit Court of the United States. The complaint alleges: "That the defendant is a corporation duly organized, and is doing business in North Carolina, and has become and is a domestic corporation under the laws of said State." There is no other allusion, express or implied, in the complaint as to its having ever been incorporated in any other State.

The affidavit upon which the petition is based, is as follows:

"O. A. Dozier, first being duly sworn by me, maketh oath that The Southern Bell Telephone and Telegraph Company is a corporation, under and by virtue of the laws of the State of New York, and that none of its incorporators, stockholders or directors are residents or resident of the State of North Carolina, or citizens or citizen of said State of North Carolina, nor are any citizen or citizens of the State of North Carolina interested in said company. Further, that none of said incorporators or their successors or stockholders or directors have ever been citizens or citizen or residents or resident of said State of North Carolina, nor have any citizen or

citizens of North Carolina ever had an interest in said corporation.

"2. That having very valuable property in North Carolina at the present time, and at and before, and after the meeting of the General Assembly of North Carolina, during the year A. D., 1899, it was forced, for the protection of its said property, which it had built and constructed in said North Carolina under authority of its laws, to file its charter under the direction of 'An act to provide a manner in which foreign corporations may become domestic corporations,' ratified by said General Assembly on the 10th day of February, A. D., 1899. Further, that it submits that the filing of its said charter, as aforesaid, did not operate to make it a citizen of the said State of North Carolina.

"O. A. DOZIER, *Manager.*"

The act referred to is chap. 62, of the Public Laws of 1899, ratified on the 10th day of February, 1899. The essential features of said act are as follows:

Section 1 provides that every telegraph, telephone, express, insurance, steamboat and railroad company organized under the laws of any other State or government, desiring to carry on any business in this State, *shall become a domestic corporation* by filing in the office of the Secretary of State copies of its charter and by-laws duly authenticated.

SEC. 2. "That all parts of charter or by-laws in contravention of the laws of this State shall be null and void in this State."

SEC. 3. "That when any such corporation shall have complied with the provisions of this act above set out, *it shall thereupon immediately become a corporation of this State, and shall enjoy the rights and privileges and be subject to the liability of corporations of this State* the same as if such

53——126

corporation had been originally created by the laws of this State. It may sue and be sued in all courts of this State, and shall be subject to the jurisdiction of the courts of this State as fully as if such corporation were originally created under the laws of the State of North Carolina."

SEC. 4. "That on and after the first day of June, eighteen hundred and ninety-nine, it shall be unlawful for any such corporation to do business or to attempt to do business in this State without having fully complied with the requirements of this act."

Section 5 provides the penalty for violating any provision of this act and the method of its collection.

SEC. 6. "No such foreign corporation is allowed to sue in the courts of this State unless domesticated."

SEC. 7. "No such foreign corporation mentioned in the preceding section of this act, shall be allowed to enter into a contract in the State of North Carolina on or after the first day of June, eighteen hundred and ninety-nine, nor shall any such contract heretofore or hereafter made or attempted to be made and entered into by such corporation in the State of North Carolina be enforced by such corporation unless such corporation shall on or before the 1st day of June, 1899, become a domestic corporation under and by virtue of the laws of North Carolina."

Section 8 prescribes the penalty for any foreign corporation doing business in this State without domestication.

The Court below denied the defendant's motion to remove, on the grounds: (1) "That the petition is defective on its face; (2) that, considering the affidavit aforesaid, filed by defendant, along with its petition, the defendant is a corporation of the State of North Carolina."

The defendant excepted and appealed, assigning among other errors, including that of citizenship, the following:

That the "opinions, conclusions and adjudication of the Court below were erroneous—(a) the same being repugnant to Art. I, sec. 8, of the Constitution of the United States" as well as various statutes enumerated. "(b) Also repugnant to Art. XIV, sec. 1, of the Constitution of the United States, in that the State of North Carolina in enforcing the said, 'An act to provide a manner in which foreign corporations may become domestic corporations,' abridges the privileges and immunities of this defendant, a citizen of the United States, and deprives this defendant of its property, without due process of law, and deprives it of the equal protection of the laws. Wherein was drawn in question the validity of the said statutes and authority exercised thereunder, and the validity of a statute of said North Carolina, on the ground of repugnancy to the Constitution of the United States; and also, the construction of above-named clauses, especially, and other clauses of said United States Constitution, and said United States statutes."

The question of diverse citizenship is the only one presented by the record; but we will briefly notice the remaining contentions.

Section 8 of Art. I of the Constitution of the United States is a very comprehensive section, and as the particular repugnancy was not pointed out to us on the argument, we are at a loss how to answer it further than to say we see no merit in the defendant's contention. We can not understand how a refusal to permit a domestic corporation to remove an action for personal injury "abridges the privileges and immunities of this defendant" as "a citizen of the United States." We are equally unable to admit that a trial in the courts of this State *ipso facto* "deprives this defendant of its property without due process of law, and deprives it of the equal protection of the laws."

DEBNAM *v.* TELEPHONE CO.

We presume that these assignments of error are intended to be taken in connection with those that follow, and are supposed legal inferences from the alleged right of removal. The questions argued were those arising from alleged diverse citizenship and the supposed existence of such a Federal quesiton as would prevent our passing upon the legality of removal.

It is but just to say that they were ably argued both orally and by brief. The defendant contends that while the cause of action does not raise a Federal question in any view, that the petition for removal does raise a Federal question, to-wit, the right of removal, which of itself ousts the jurisdiction of the State courts. In other words, that no matter what may be the nature of the action, a defendant can absolutely stop all further proceedings in the State courts by a mere petition for removal; and that the State courts can not pass even in the first instance upon their own jurisdiction, provided only that the petition is regular in form, no matter how apparent may be its essential want of validity.

We can not think that this is the law. No court has a right to abandon its own lawful jurisdiction when properly invoked, any more than it has to infringe upon the exclusive or paramount jurisdiction of another tribunal. The State court clearly has original jurisdiction of the action at bar, subject to be defeated by the defendant's right of removal if such right exists. Such existing right of removal may be waived by the defendant, or rather it is lost if not claimed in apt time and in strict accordance with the terms of the statute. The petition taken in connection with the complaint, must show a *prima facie* right of removal; in which event it is the duty of the State court to grant the order of removal and stay all further proceedings. If the defendant does not show a *prima facie* right, it is the duty of the State court to

retain the cause for such further proceedings as may be proper. It is not a question of discretion for either tribunal, but one of absolute right involving the vital fact of jurisdiction; and the relinquishment of jurisdiction by one or its assumption by the other, would not confer the right of removal if it did not already exist. It would seem that, for the purposes of the motion, disputed facts are properly determinable by the Federal courts; but the principle is fully recognized by the Supreme Court of the United States that "the State court is not required to let go its jurisdiction until a case is made which, upon its face, shows that the petitioner can remove the cause as a matter of right." *Removal Cases,* 100 U. S., 457, 474; *Amory v. Amory,* 95 U. S., 186; *Tulee v. Vose,* 99 U. S., 539, 545; *Stone v. South Carolina,* 117 U. S., 430, 432; *Howard v. Railway,* 122 N. C., 944, 953, 954; *Bradley v. Railroad,* 119 N. C., 744, and appendix 918.

It has also been held that: "The Circuit Court of the United States has no jurisdiction, either original or by removal from a State court, of a suit as one arising under the Constitution, laws or treaties of the United States, unless that appears by the plaintiff's statement of his own claim." *Tennessee v. Bank,* 152 U. S., 454. In this case occurs the following significant words, on page 462: "The change is in accordance with the general policy of these acts, manifest upon their face, and often recognized by this Court, to contract the jurisdiction of the Circuit Courts of the United States."

If the State court wrongfully denies the petition, the defendant can remain and defend himself in the State court without losing his right of removal. He can appeal from such denial, and can eventually take his writ of error to the Supreme Court of the United States, where the question

will be finally determined. Until such determination we can not be required to surrender what appears to us to be our rightful jurisdiction. What under such circumstances may be the rights and duties of the parties in the Federal courts, it is not for us to determine.

In the case at bar there are really no disputed facts, the only question being the construction of the said act of February 10, 1899. We must therefore determine (1) whether said statute has the effect of making the defendant a domestic corporation as distinguished from a mere licensee; and (2) what is its further effect under the United States statutes of removal. It is well settled that a corporation being a mere creature of the law, has no legal existence outside of the sovereignty that created it, except in so far as it may be recognized by the so-called law of comity. The rule of comity, for · it is nothing more than a rule, is of such general acceptance as to carry with it the presumption of its existence; but this is a mere presumption which may be rebutted by any act of the legislative power which may amount to its express or implied repudiation. Foreign corporations may be entirely excluded by any State, or may be admitted upon any terms and conditions that are not repugnant to the Constitution and laws of the United States.

The nature and status of a foreign corporation are so well stated in *Paul v. Virginia,* 75 U. S., 168, that our own views can best be expressed by an extended quotation. The Court says, on page 180: "But the privileges and immunities secured to citizens of each State in the several States, by the provision in question, are those privileges and immunities which are common to the citizens in the latter States under their Constitution and laws by virtue of their being citizens. Special privileges enjoyed by citizens in their own States are not secured in other States by this provision. It was not intended by the provision to give to the laws of one

State any operation in other States. They can have no such operation, except by the permission, express or implied, of those States. The special privileges which they confer must, therefore, be enjoyed at home, unless the assent of other States to their enjoyment therein be given. Now a grant of corporate existence is a grant of special privileges to the corporators, enabling them to act for certain designated purposes as a single individual, and exempting them (unless otherwise specially provided) from individual liability. The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this Court in *Bank of Augusta v. Earle,* 'It must dwell in the place of its creation, and can not migrate to another sovereignty.' The recognition of its existence even by other States, and the enforcement of its contracts made therein, depend purely upon the comity of those States—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion. If, on the other hand, the provision of the Constitution could be construed to secure to citizens of each State in other States the peculiar privileges conferred by their laws, an extra-territorial operation would be given to local legislation utterly destructive of the independence and the harmony of the States. At the present day

corporations are multiplied to an almost indefinite extent. There is scarcely a business pursued requiring the expenditure of large capital, or the union of large numbers, that is not carried on by corporations. It is not too much to say that the wealth and business of the country are to a great extent controlled by them. And if, when composed of citizens of one State, their corporate powers and franchises could be exercised in other States without restriction, it is easy to see that, with the advantages thus possessed, the most important business of those States would soon pass into their hands. *The principal business of every State would, in fact, be controlled by corporations created by other States."*

This able opinion, coming without dissent from the Court of last resort, clearly lays down the underlying principles originating and governing the statute now under consideration. The dangers therein pointed out have become too fully realized to be longer ignored; and are greatly aggravated by the open policy adopted by certain States of chartering corporations with almost unlimited powers for the sole purpose of transacting business in other States. So far has this gone that we have merchants in this State, who, having failed as a partnership subsequently incorporated under the laws of another State, immediately resumed their same old business at the same old stand, in the State of their life-long residence with all the privileges and immunities of a foreign corporation.

It seems to be well settled that while a State can, in its discretion, absolutely prohibit a foreign corporation from transacting any business within its borders, it can not impose conditions that are repugnant to the Constitution and laws of the United States. Such would be any provision requiring a foreign corporation to surrender or agree to waive its right of removal to the Federal courts as a condition prece-

dent to obtaining license.   Nor can a State forbid a foreign corporation, *as such,* from removing its causes when otherwise entitled to do so.   *Insurance Co. v. Morse,* 87 U. S., 445, 456; *So. Pacific Co. v. Denton,* 146 U. S., 202, 207; *Barron v. Burnside,* 121 U. S., 186, 200, and cases therein cited.

Construing the Act of February 10, 1899, now under consideration, as a North Carolina statute, it is clear to us that the legislative intent was, not to grant a mere license under which foreign corporations might do business in this State, but to require all such corporations to become domestic corporations either by re-incorporation or adoption.   Whatever the process may be called, the intent of the act, as well as its legal effect, was to make all corporations complying with its conditions domestic corporations of the State of North Carolina.   *Its effect was to charter and not to license.*

But it is argued that the act has attempted to create a domestic corporation, not out of natural persons, but out of a foreign corporation that has no natural or legal existence in this State.   This is only partially correct.   Whatever may be the wording of the act, its effect, as well as legal intent, is to create a domestic corporation out of the stockholders of the foreign corporation.   Perhaps it would be better to say that it enables the stockholders of a foreign corporation to become a domestic corporation with the same capital stock and identical powers, privileges and obligations.

Again, it is said that the act requires a foreign corporation to file its foreign charter and by-laws; but this is done, not as recognizing the legal validity of such charter, but to definitely ascertain the powers to be conferred, which can never exceed those permitted by the Constitution and laws of this State.   In fact, as a foreign corporation, having no legal existence in this State, can never be anything more than a licensee, express or implied, it would seem that it could

become a domestic corporation only by some form of creation. Because in building a house, a man may use some timbers hewn by someone else, he is none the less the builder of the house; and the defendant is none the less a North Carolina corporation because our laws permit it to use its New York charter and by-laws simply for the purpose of indicating the extent of its powers acquired by virtue of our incorporation.

It may be said that this is an artificial construction, but so is the entire existence of a corporation. In *Ohio, etc., Rd. v. Wheeler,* 1 Black (66 U. S.), 286, 297, Chief Justice TANEY, speaking for the Court, says: "It is true that a corporation by the name and style of the plaintiffs appears to have been chartered by the States of Indiana and Ohio, clothed with the same capacities and powers, and intended to accomplish the same objects, and it is spoken of in the laws of the States as one corporate body, exercising the same powers and fulfilling the same duties in both States. Yet it has .no legal existence in either State, except by the law of the State. And neither State could confer on it a corporate existence in the other, nor add to or diminish the powers to be there exercised. It may indeed, be composed and represent, under the corporate name, the same natural persons. But the legal entity or person, which exists by force of law, can have no existence beyond the limits of the State or sovereignty which brings it into life and endues it with its faculties and powers."

In *Nashua Rd. v. Lowell Rd.,* 136 U. S., 356, 373, the Court said: "Identity of name, powers and purposes, does not create an identity of origin or existence, any more than other statutes, alike in language, passed by different legislative bodies, can properly be said to owe their existence to both. To each statute and to the corporation created by it there can be but one legislative paternity."

Of course all such chartered rights are held at the will of the Legislature, and under sec. 1, Art. VIII, of the Constitution, "may be altered from time to time or repealed." A mere license is admittedly revocable at any time, not reaching the dignity of a charter.

Having thus decided that the act in question does not license or pretend to license, but in legal intention and effect *creates a domestic corporation,* we come to the final question, whether a corporation so domesticated can remove an action into the Federal courts solely by virtue of its prior incorporation by some other State. In the case at bar the defendant voluntarily took advantage of the act, and became a domestic corporation, certainly as far as that act could make it so. It held itself out to the people of North Carolina as a domestic corporation in order to obtain their business, and at the same time evade the penalties attaching to the transaction of any business by a foreign corporation after all comity had been withdrawn by legislative authority. The plaintiff has sued the defendant as a domestic corporation of this State, and in that capacity only; and states a cause of action that presents no element whatsoever of a Federal question. He simply seeks to recover damages for personal injuries inflicted upon him by the defendant's servants who dropped an iron bar upon his head while he was walking the public streets of an incorporated city. Admitting that the defendant exists in a dual capacity as a corporation under the laws of New York as well as of North Carolina, the plaintiff elected to sue it in the latter capacity. In fact, we do not see how he could well have sued it in any other capacity. Forbidden by law to do any business as a foreign corporation, and holding itself out as a domestic corporation, was not the plaintiff forced to presume that he was injured by the defendant in the transaction of its business as a domestic corporation? Is it not a legal

presumption that the defendant was acting in that capacity in which alone it could lawfully transact any business? It seems that if the defendant had, as *plaintiff,* been seeking to enforce a lawful cause of action, it might have brought suit in the Federal courts *by electing to sue as a New York corporation.* We do not see how it could have sued in the Federal courts as a domestic corporation, nor could it have brought suit in the State courts as a foreign corporation, because as a purely foreign corporation it has now no legal existence in the State of North Carolina.

Recognizing the fact that this is a question whose ultimate determination rests with the Supreme Court of the United States, we have carefully examined its reports, and have endeavored to reconcile our decision with its opinions. We think they are entirely consistent. The facts in the case at bar seem identical with those in *Memphis R. Co. v. Alabama,* 107 U. S., 581. The headnote of that case, written by Mr. Justice GRAY, who also wrote the opinion, is as follows: "The Memphis and Charleston Railroad Company is made, by the statutes of Alabama, an Alabama corporation; and, although *previously* incorporated in Tennessee also, can not remove into the Circuit Court of the United States a suit brought against it in Alabama by a citizen of Alabama." The opinion says, on page 585: "The defendant, being a corporation of the State of Alabama, has no existence in this State as a legal entity or person, except under and by force of its incorporation by this State; and although · also incorporated in the State of Tennessee, must as to all its doings within the State of Alabama, be considered a citizen of Alabama which can not sue or be sued by another citizen of Alabama in the courts of the United States." Citing *R. Co. v. Wheeler,* 1 Black., 286; *R. Co. v. Whitton,* 13 Wall., 270, 283.

If this be the law then we are compelled to hold in the

case at bar that the defendant, being a corporation of the State of North Carolina, has no existence in this State as a legal entity or person, except under and by force of its incorporation by this State; and although also incorporated in the State of New York, must, as to all its doings within the State of North Carolina, be considered a citizen of North Carolina, which can not, when sued by another citizen of North Carolina, remove the cause into the courts of the United States. It is rare that a precedent so exactly fits that the case under consideration can be decided by the adoption of a single sentence from the opinion of the cited case with a mere change of names. Has that case been overruled or modified? Not so far as we can see, certainly not in express terms nor by necessary implication in any case that has been cited to us or that we have been able to find. On the contrary, it has been expressly cited with approval in numerous cases, including *St. Louis Ry. Co. v. James,* 161 U. S., 545, 559, and *Louisville Ry. v. Trust Co.,* 174 U. S., 552, 581, so strongly relied on by the defendant. The last case, which is the latest utterance of the Supreme Court upon the subject, was written by Mr. Justice GRAY, who also wrote the opinion in *Memphis Rd. v. Alabama.* This learned Judge surely would not have expressly cited his own opinion with approval if he had intended to overrule it by implication. On page 562, he says: "This Court has often recognized that a corporation of one State may be made a corporation of another State by the Legislature of that State, in regard to property and acts within its territorial jurisdiction." Citing *Ohio and Mississippi Rd. v. Wheeler,* 1 Black, 286, 297; *Railroad Co. v. Harris,* 12 Wall., 65, 82; *Railway Co. v. Whitton,* 13 Wall., 270, 283; *Railroad Co. v. Vance,* 96 U. S., 450, 457; *Memphis and Charleston Railroad v. Alabama, 107 U. S., 581; Clark v. Barnard,* 108 U. S., 436, 451, 452; *Stone v.*

*Trust Co.,* 116 U. S., 307, 334; *Graham v. Railroad,* 118 U. S., 161, 169; *Martin v. Railroad,* 151 U. S., 673, 677.

And again, on the same page: "But this Court has repeatedly said that, in order to make a corporation, already in existence under the laws of one State, a corporation of another State, 'the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the Legislature, and such allegiance as a State corporation owes to its creator.' The mere grant of privileges or powers to it as an existing corporation, without more, does not do this."

This clear and concise statement of the law would meet our unqualified approval even if it had come from a different source. Applying this rule in its strictest form, we are clearly of opinion that the act now under consideration does not pretend to be a "mere grant of privileges or powers," but is in legal intent and effect "a creation or adoption in such form as to confer the power usually exercised over corporations by the State or by the Legislature, and such allegiance as a State corporation owes to its creator." The act says in express terms, "That every telephone  *  *  * company incorporated, created and organized under and by virtue of the laws of any State or government other than that of North Carolina, desiring to own property or to carry on business *or to exercise any corporate franchise whatsoever in this State, shall become a domestic corporation of the State of North Carolina* by filing, etc.  *  *  * That when any such corporation shall have complied with the provisions of this act above set out, it shall thereupon immediately *become a corporation of this State, and shall enjoy the rights and privileges and be subject to the liability of corporations of this State the same as if such corporation had been originally created by the laws of this State.*"

The distinction between the case at bar, following the opinion in *Memphis Rd. v. Alabama,* and the case of *Louisville Ry. v. Trust Co.,* seems to be that in the last case the complainant, being a corporation of the State of Indiana by original creation, even if also a corporation of Kentucky by adoption, *elected* to sue in its former character. If it had elected to sue as a Kentucky corporation, or some one had elected to sue it in such capacity, the suit could not have been brought in the Federal courts within the State of Kentucky. This seems to appear from the opinion of the Court on page 563, where the following language is used: "But a decision of the question whether the plaintiff was or was not a corporation of Kentucky does not appear to this Court to be required for the disposition of this case, either as to the jurisdiction, or as to the merits.

As to the jurisdiction, it being clear that the plaintiff was first created a corporation of the State of Indiana, even if it was afterwards created a corporation of the State of Kentucky also, it was and remained for the purposes of the jurisdiction of the courts of the United States, a citizen of Indiana, the State by which it was originally created. It could neither have brought suit as a corporation of both States against a corporation or other citizen of either State, nor could it have sued or been sued as a corporation of Kentucky, in any court of the United States."

The case of the *Memphis and Charleston Railroad v. Alabama,* is so completely "on all-fours" with the case at bar, and has been so often and so recently approved, that further citations seem unnecessary; but the same principle is clearly enunciated in *Martin v. B. and O. Rd.,* 151 U. S., 673. There the Court says, on page 677, that: "A railroad corporation, created by the laws of one State, may carry on business in another, either by virtue of being created a cor-

poration by the laws of the latter State, also as (citing cases) :
or by virtue of a license, permission or authority, granted by
the laws of the latter State, to act in that State under its
charter from the former State, (citing cases). In the first
alternative, it *can not* remove into the Circuit Court of the
United States a suit brought against it in a court of the latter
State by a citizen of that State, because it is a citizen of the
same State with him." Citing *Memphis and Charleston Rd.
v. Alabama.* "In the second alternative, it *can* remove such
a suit, because it is a citizen of a different State from the
plaintiff."

The leading text-writers take the same view of the question.
Thompson in his elaborate work on corporations, says, in vol-
ume 6, sec. 7472 : "We have several times had occasion to
examine into the constitution of this species of corporation,
with the conclusion that it is a *domestic corporation in each
of the States* by whose legislation, in concurrence with that
of other States, it has been created. This being so, when it
is sued in a court of any one of such States by a citizen
thereof, it is *not entitled to remove the cause to a court of the
United States* on the ground of diverse State citizenship."
To the same effect are Clark on Corporations, secs. 36, 37 and
38 ; Morawitz on Priv. Corp., secs. 999, 1001 ; Desty Fed.
Pro., p. 321 ; Black's Dillon on Rem. of Causes, sec. 101.

There are many other cases sustaining the position we have
taken, but those above cited are so carefully considered and
ably written, with such full citation of authority, that further
elaboration by us seems useless.

We are of the opinion that as the defendant has become
a domestic corporation of the State of North Carolina, and
in contemplation of law a citizen thereof, and as the plaintiff
has sued the defendant as a North Carolina corporation upon
a cause of action which discloses no Federal question what-

ever, the case can not be removed into the Circuit Court of the United States. Therefore the judgment of the Court below is

Affirmed.

FURCHES, J., dissenting. It is with hesitation that I dissent from the well-considered opinion of the Court, especially so, when personally I have no objection to the conclusion arrived at. And it may appear strange that I dissent for the reason that I have an entirely different conception of the case from that of the Court. If I agreed with the Court as to who the defendant is, I would agree with the Court in its conclusion.

I do not propose to enter into a discussion of the case, but simply to state my position and some of the reasons for my not agreeing with the Court; and it is to be regretted that a case of so much importance as this should be presented in such a way as to leave any doubt as to the very question upon which I think the appeal depends.

Is the New York corporation or the North Carolina corporation the defendant? The summons does not say which is the defendant. The complaint does not say in direct terms whether it is the New York corporation or the North Carolina corporation. But it seems to me that by direct implication it does say that it is the New York corporation. It says: "That the defendant is a corporation duly organized, and is doing business in North Carolina, and has become and is a domestic corporation under the laws of said State."

It is plainly stated that the defendant is a corporation, and that it (the defendant) has *become* a domestic corporation under the laws of North Carolina. So the thing sued existed before it *became* domesticated. It is not the thing created by domestication that is sued, but the thing that existed before,

54——126

and has *become* domesticated. But if there was any doubt as to this, it seems to me to be made plain and certain by the affidavit of O. A. Dozier, which was received and considered by the Court in passing upon the motion to remove. He says "That at the time said suit was begun, and at the present time, the defendant was, and still is, a corporation chartered by and existing under and by virtue of the laws of the State of New York."

And the Court in passing upon the motion to remove, says: "That considering the affidavit aforesaid (Dozier's) filed by the defendant, along with its petition, the defendant is a corporation of the State of North Carolina." These facts stated in the affidavit were not denied—were considered by the Court; and must be taken as true. These facts being true it seems to me settles the question, and shows that it was the New York corporation which was sued. In other words, there was a latent ambiguity (two John Smiths), and the affidavit showed it was the New York John which was sued. But as it has become domesticated under the Act of 1899, the Judge held as a matter of law that the New York corporation was not entitled to have the case removed because it had become a domestic corporation. In this I think he was in error.

It is stated in the opinion of the Court that it must have been the North Carolina corporation which was sued, as it is admitted that the defendant was doing business in North Carolina at the time of the injury; and that the New York corporation had no right to do business in North Carolina after the Act of 1899 went into effect. I submit that this must be an error. It is true that this act did take from the defendant and all other foreign corporations their comity—their right to engage in business in this State, unless they complied with that act by becoming domesticated. But when

they did this, their right of comity was restored, and the conclusion of the Court is incorrect.

I agree that a foreign corporation may become a North Carolina corporation by complying with the Act of 1899. Indeed, there must be a foreign corporation before this act can operate. It is then made a North Carolina corporation, not by creation, but by adoption. But this new corporation has a new and distinct entity from the New York corporation. It does not bring the New York corporation into North Carolina; it can not do this, because a corporation can have no legal existence or authority outside of the State that gives it corporate life, except by the law of comity.

My opinion is that had the plaintiff sued the North Carolina corporation, it would not have been entitled to removal, based on diverse citizenship. But as the plaintiff chose to sue the New York company, the defendant was entitled, as I think, to an order of removal.

FAIRCLOTH, C. J., also dissents.