COMMISSIONERS OF BEAUFORT COUNTY v. OLD DOMINION
STEAMSHIP CO.

(Filed June 7, 1901.)

1. TAXATION—*Foreign Corporations—Capital Stock—Assessment.*

A non-resident corporation is liable for taxation for such propor-
tion of its capital stock as the value of its tangible property
within the State bears to the value of all its tangible prop-
erty.

2. TAXATION—*Assessment—County    Commissioners—Corporation
Commissioners—Stock—Corporation—Acts 1899, Ch. 15, Sec.
39—Capital Stock.*

Under Acts 1899, Ch. 15, Sec. 39, assessment of taxes on the capi-
tal stock of a steamboat company must be made by the Cor-
poration Commission, and not by the County Commissioners.

3. APPEAL—*Supreme Court—Appellate Court—Exceptions and Ob-
jections—Ex Mero Motu.*

The Supreme Court will, on appeal, take notice *ex mero motu* of
the failure of the Corporation Commission to assess taxes
as required by law, though they had been assessed by the
County Commissioners.

ACTION by the Commissioners of Beaufort County against
the Old Dominion Steamship Company, heard by Judge
*T. A. McNeill,* at December Term, 1900, of the Superior
Court of Beaufort County. From a judgment for the de-
fendant, the plaintiffs appealed.

*W. B. Rodman,* for the plaintiffs.
*Gilliam & Gilliam,* for the defendant.

CLARK, J.  The defendant having "domesticated" under
the Craig Law, the question here presented is, how much of
its capital stock should be taxed in this State? Upon the

facts agreed, the capital stock of $1,250,000 is all listed for taxation in Delaware. The defendant does business in several States, and the value of its tangible property in this State, steamers, warehouses, etc., is $62,000, all of which is listed for taxation. It has no separate capital stock as a domesticated corporation, its business and property here being part of the general corporation, chartered and doing business in several States.

In *Commissioners v. Tobacco Co.,* 116 N. C., 441, it is held that "capital stock" is a distinct subject of taxation from "shares" of capital stock, the former belonging to the corporation, and the latter to the individual stockholders. It was held, following the uniform decisions here and elsewhere which are cited, that it was "within the legislative power, in respect to corporations, to levy any two or more of the following taxes simultaneously: (1) On the franchise (including dividends); (2) on the capital stock; (3) on the tangible property of the corporation, and (4) on the shares of the capital stock in the hands of the stockholders—taxation on the last two being imperative under the Constitution.

Under sec. 39, ch. 15, Laws 1899, the assessed value of the real and personal property of the corporation is directed to be deducted from the aggregate value of the shares of stock, and the difference, if any, to be listed for taxation, the object being evidently to avoid double taxation (though the Legislature could authorize it, *Commissioners v. Tobacco Co., supra*). The defendant having no separate capital stock, as a North Carolina corporation, contends that it can not be taxed here because it is a non-resident corporation. It is settled that it is a domestic corporation (*Debnam v. Telephone Co.,* 126 N. C., 831), so far as jurisdiction is concerned.

As to matters affecting taxation, it makes no difference whether it is a North Carolina corporation or not. Whether domesticated here or not, the business and operations here

are practically a part of the larger corporation doing business in several States (2 Morawetz Corp., secs. 994, 996), and, therefore, as repeatedly held in the United States Supreme Court, whenever a tax upon the capital stock of corporations is laid "such a proportion of the whole value of its capital stock as the length of its lines within the State bears to the length of its lines anywhere" can be taxed as capital stock in this State. *Western Union Telegraph Co. v. Taggart,* 163 U. S., 1. As our Statute directs the value of its tangible property to be deducted, the sum of $62,000, the value of the defendant's tangible property in this State should be deducted from the proportion of the valuation of the whole capital stock, which, by above rule, should be proportioned to this State and the difference should be taxed in this State as capital stock. The above rule was re-affirmed in *Adams Express Company v. Ohio,* 165 U. S., 194, and *Same v. Kentucky,* 166 U. S., 171. Upon a rehearing of the former case *Adams Express Company v. Ohio,* 166 U. S., 185, the point was most elaborately and ably argued, as may be seen from the briefs, and the above doctrine again repeated and conclusively in an opinion in an unanimous court by Mr. Justice Brewer. In that case it is held, "whatever property is worth for the purpose of income and sale, it is worth for the purpose of taxation, and when, as in the case of the express company, the tangible property of the corporation is scattered through different States by means of which its business is transacted in each, the *situs* of this intangible property is not simply where its home office is, but is distributed wherever its tangible property is located and its work is done." It was also held that "no fine spun theories about *situs* should interfere to enable those large corporations, whose business is of necessity carried on through many States, from bearing in each State such burden of taxation as a fair distribution of the actual value of the property among those States requires."

Hence, in the Ohio case a tax on $533,095.85 of capital stock was sustained, though the corporation had only $42,065 of real and personal property in that State. In the Kentucky case a tax on $1,463,040 as the fair proportion of its capital stock, taxable in the State, was sustained, though the corporation had only $36,614.53 of tangible property within that State. 166 U. S., bottom of page 172. Where the Legislature arbitrarily fixed the proportion of the capital stock of a corporation operating in several States, which should pay taxes in that State, it was upheld. *Minot v. R. R.*, 85 U. S., 206.

Under our Statute, the assessment of the capital stock should be made by the Corporation Commissioners, and not by the County Commissioners. This objection is not made by exception below nor by motion here, but it is a defect of which we can take notice *ex mero motu*. While, therefore, we must dismiss the action we have passed upon the point, as the party interested desires us to do so by not having objected, and it is a matter of public interest. *Milling Company v. Finlay*, 110 N. C., 411; *S. v. Wylde, Id.,* 500.

Action dismissed.

DOUGLAS, J., concurring in result. I concur in the conclusion of the Court, and I am inclined to think that the method of taxation indicated in its opinion would be correct if imposed by the proper authority; but I can not concur, as now advised, in the statement founded upon the case of *Commissioners v. Tobacco Co.,* 116 N. C., 441, that it is "within the legislative power, in respect to corporations, to levy any two or more of the (four) following taxes *simultaneously.*" I think that a corporation should be taxed *once* on all its tangible and intangible property. This would include not only what is generally known as property, but also its franchise, and, in fact, whatever goes to make up the actual or market

128——36

value of its stocks and bonds. I also think that its shares of stock may properly be taxed in the hands of its shareholders, because it then assumes a new form as personal property following the domicile of its owner. If I have not fully paid for my house, I am still assessed on its full value, while my note is assessed as a solvent credit in the hands of him who holds it. This is in one sense double taxation, inasmuch as it is based upon the same piece of tangible property, but the same individual is not doubly taxed. I am referring now only to *ad valorem* taxation, and not to license taxes, which are entirely different in their nature. It seems to me that, as far as circumstances will permit, the same rule should be applied to the corporation and to the individual, both of whom should be made to bear their just proportion of the burdens of government, without favoritism upon the one hand or oppression upon the other. So far as lies within my power, I shall hold corporations to the fullest measure of responsibility, but they must be given an equal measure of justice.

I have given much consideration to the matter of corporate taxation, and shall continue to do so, as it is a question which I fear will ultimately tax to the utmost the powers of the legislative, and perhaps of the judicial departments of the government; but I am not prepared, nor would it be proper to express any opinion as to the extent or limitation of those powers. All I wish to do at present is to withhold my assent from a former opinion of this Court, in which I took no part, and which, I regret to say, as I am now advised, enunciates a proposition in which neither my judgment of the law nor my sense of justice will permit me to concur.