## ALLISON v. SOUTHERN RAILWAY CO.

(Filed December 17, 1901.)

1. REMOVAL OF CAUSES—*Foreign Corporations—Domestic Corporations—Acts 1899, Ch. 62—Local Prejudice.*

   A foreign corporation domesticated under Acts 1899, Ch. 62, can not remove an action to the federal court on account of local prejudice.

2. ATTORNEY AND CLIENT—*Parties—In Forma Pauperis—Pauper Suit—Fees—Contingent—Presumptions.*

   The bringing of a pauper suit does not raise a presumption that the attorney took the case for a contingent fee and was therefore a party in interest.

3. CONTINUANCES—*Interest—Trial.*

   The fact that an attorney in an action is the son of the trial judge is not ground for a continuance.

4. MASTER AND SERVANT—*Vice-Principal—Negligence.*

   Where a section master fails to use reasonable care for the protection of persons working under him and one of them is injured, the defendant company is liable for the negligence of its servant.

5. MASTER AND SERVANT—*Contributory Negligence—Assumption of Risk—Section Master.*

   Where a section master orders a person under him to throw a hand-car off the track to prevent a collision with a freight train and the employee is injured in the execution of the act, he is not guilty of contributory negligence.

ACTION by J. H. Allison against the Southern Railway Company, heard by Judge *M. H. Justice* and a jury, at October Term, 1901, of the Superior Court of McDOWELL County. From a judgment for the plaintiff, the defendant appealed.

*Justice & Pless,* for the plaintiff.
*George F. Bason,* for the defendant.

MONTGOMERY, J.    The defendant is now, and was at the time of the commencement of this action, a domestic corporation originally created and organized under the laws of the State of Virginia, and, by proceedings in the Circuit Court of the United States for the Western District of North Carolina, obtained an order for the removal of the action from the Superior Court of McDowell County to the Circuit Court of the United States in and for the Western District of North Carolina.

The plaintiff, in his complaint, alleged his damages to be $6,000, and the order of removal was based upon affidavits alleging local prejudice.   The proceedings were certified to the Superior Court of McDowell County, and a motion of defendant's counsel to dismiss the action from the docket because of the order of removal was refused by his Honor. The reason assigned for his Honor's refusal to dismiss the action, or to stay proceedings in the State Court, was that the defendant had complied with the terms of the act of the Legislature of the State of North Carolina, Chapter 62 of the Acts of 1899, and thereby became a corporation of 'this State.   The ruling of his. Honor is sustained in the cases of *Debnam v. Telephone Co.,* 126 N. C., 831, and *Layden v. Knights of Pythias,* 128 N. C., 546.

The defendant then moved to continue the cause on the alleged ground that the petition of the plaintiff to sue *in forma pauperis* showed that his counsel had taken the case for a contingent fee, and was therefore "a partner in the suit, as much so as if his name had appeared in the summons and the complaint"; and also upon the ground that plaintiff's counsel was a son of the Judge before whom he pro-.

22——129

posed to try the case.    His Honor, we think, properly re-
fused the motion.

The plaintiff, in his affidavit, affirmed that he was unable
to give a prosecution bond in the sum of $200, or to make
a deposit of like amount for the same purpose; but it did not
necessarily follow that he was unable to compensate his
counsel in some way other than by a division of the amount
of recovery, or that his counsel had not assumed the prosecu-
tion of the suit without compensation.    But suppose it was
the contract between the plaintiff and his attorney that the
attorney's compensation should be contingent upon recovery,
and that' fact should have been known to his Honor, should
his Honor have declined to preside over the trial, as Judge,
because of the interest which his son had in the recovery?
We know of no law which requires such a course on his part.
The Judges of our Courts are presumed to be men of char-
acter and learning, and not to be influenced by fear, favor
or affection towards any suitor or attorney in causes before
them.    And especially in this case does the Judge seem to
be justified in proceeding with the trial.    He stated "that
he knew not nor cared what arrangements counsel had with
client as to fees.    That he had no interest whatever in the
matter, and that he was fully conscious of his ability to try
the case with absolute impartiality.    That he had two sons
practicing law in his district who had been often appearing
and trying cases before him, and that to grant this motion now
would be to make an admission of his inability to hear their
cases impartially, which his feelings did not justify, and
which he did not feel called upon to make; besides, it ap-
peared to the Court that at the local bar meeting, when the
calendar for this term was made, one of the defendant's
counsel was present and requested that this case be placed on
the calendar a day certain with other cases for the accommo-
dation of other of defendant's counsel, and that it was so
arranged for trial, and that out of twenty cases on the calen-

dar, Justice & Pless appeared in eighteen of them, and this
was the first case called for trial, and a continuance of this
on such ground would set a precedent to continue the calen-
dar and adjourn the Court. That the Judge then stated
that unless other grounds for continuance were offered, he
would proceed to try the case, as he could not abdicate the
bench or debar his relatives from practicing by granting
continuances upon this ground."

The fifth and sixth exceptions of defendant concerned
certain instructions given by his Honor on the question of
the defendant's negligence. The fifth exception is to that
part of the charge which is in this language:

"If you believe from the evidence that the plaintiff was
a section hand, and Martin was a track foreman or section
boss in the employment of the defendant company, and was
a vice-principal of the plaintiff, and the duties of plaintiff
and Martin are as set out in the printed rules introduced in
evidence, and that Martin ordered his hand-car put on the
track by plaintiff and others, and ordered plaintiff and others
to go on said car towards Old Fort, said Martin knowing
there was a past-due train liable to come along the track
meeting them, and the said Martin, without informing plain-
tiff of the danger, met the train at a point where it could
not be seen by those on the hand-car until it was within 510
feet of them, and would reach the point where the hand-car
was in nine or ten seconds, and said Martin had not sent out
a flagman, or taken other precaution to protect the plaintiff,
this would be negligence on the part of the defendant, and
the plaintiff would not be guilty of negligence in riding on
said hand-car."

And the sixth exception is to that portion of the charge
which is in these words:

"It was his duty to listen and look, and in case danger
was reasonably to be apprehended from a belated train or

otherwise, to send a flagman in front of the hand-car to notify the engineer on the train, so that the train might be stopped or slowed up, or by bell or whistle give notice of its approach, in order that the hand-car crew might save themselves from danger. If you find that there was negligence on the part of the track foreman in his duties as just defined to you, and find that he was the defendant's agent, as I have described the agency to you, and plaintiff's superior, and further find that the injury occurred, if it did occur, in the performance of the duties conferred on the agent, and that Martin negligently ordered plaintiff to go on the track to remove the car, and that the injury was the result of the negligence of Martin, then you will answer the first issue 'Yes.' "

There was evidence on the part of the plaintiff going to show that the plaintiff and others were, at the time of the plaintiff's injury, under the control and management of a man by the name of Martin, and that he was the section master, or track foreman, of defendant company, and that he hired and discharged hands without consultation or advice from anybody; that a day's labor on the part of Martin's employees began in the morning when they put the car on the track, and ended after the hand-car was put in the toolhouse; that when the day's work was over, and Martin and the hands upon the hand-car were returning to their homes, they met suddenly a freight train that was known to be late by both Martin and the plaintiff, and at a distance of about one hundred yards off before it was seen—the view of the approaching train being obstructed by a curve in the shape of an S; that no signals or precaution had been taken by Martin to discover the approach of the belated train, as was required by the rules of the company.

The rules and regulations of the company in respect to track foremen were introduced, and from them it appeared that the track foreman had charge of the track, laborers and

road-watchmen employed upon that section; that a constant lookout should be kept for trains, and that when there was not a clear view of the track far enough to insure absolute safety, flagmen must be sent out with danger signals to protect them.

There was also evidence on the part of the plaintiff tending to show that the whole party jumped from the hand-car when they saw the rapidly approaching train about a hundred yards off, and were in places of safety, but at the sudden and peremptory command of Martin, the plaintiff attempted to go back and lift the hand-car from the track, and in doing so was struck by the engine and badly hurt.

Upon that testimony, we can see no error in the instructions of his Honor, which have been complained of. The *defendant* was negligent whether he informed the plaintiff or did not inform him of the danger of a collision.

On the question of whether the plaintiff contributed to his own injury, the defendant excepted (8th exception) to the following instruction of his Honor: "If, however, the act required of plaintiff was essentially hazardous, he was not bound by his duties to obey orders, and would not be exculpated from the charge of contributory negligence." By the language 'essentially hazardous,' is meant apparent certainty to plaintiff that the act would cause injury." There was no error in that instruction under the evidence and circumstances of this case. Ordinarily, however, that would not be the rule, and a person would certainly be guilty of contributory negligence if he obeyed the orders of his superior in cases where it appeared reasonably certain that his obedience would be attended with injury to himself. In *Hinshaw v. Railroad,* 118 N. C., 1047, where a passenger, after having been told by the conductor to get off, did so, and was hurt because the place was not a safe one for him to alight, all of which was seen and known by the plaintiff, this

Court said: "The danger must not only be apparent, but great—more chances against a safe exit than in favor of it." That, we think, would be a safe rule to be applied ordinarily in cases where employees were ordered by their superiors to do certain acts in the ordinary course of their business. But in cases like the one now before the Court, where there was imminent peril of a colision between a train moving at 30 or 35 miles an hour downgrade, and a hand-car, its occupants being greatly excited and disturbed by the sudden approach of the train, we think, as did his Honor, that in the effort to prevent the effects of such a collision an order from the foreman to an employee to return to the track and throw the hand-car off could be obeyed without culpability on the part of the employee, unless it was certain that in doing so injury would occur to him.

Further, under the head of contributory negligence, his Honor instructed the jury that "If the plaintiff was an employee of defendant, and by reason of the negligence of the defendant through a vice-principal, Martin, put in sudden peril and great danger, and immediately after the plaintiff had extricated himself from his hazardous and dangerous position, was commanded by such vice-principal to get a hand-car off the track, and if, in attempting to obey this order, was hurt, the law in regard to the contributory negligence of the plaintiff is as follows: 'If the agent of the employer' and the vice-principal of the plaintiff 'suddenly commanded the plaintiff (a laborer) to do an extra hazardous act in the course of his duty, one that may, though not probably, be safely done by observing due care, one that must be done at once, if done at all, and if the laborer obeys the command promptly, moved only by a faithful sense of duty, and as a consequence suffered serious bodily injury—in that case the injured party does not contribute to his own injury."

We think the instruction a proper one, and that the law

as announced in *Patton v. Railroad,* 96 N. C., 456, supports the charge. The other exceptions of the defendant are only variations in the manner of their statement of the ones which we have discussed, and it is not necessary to particularly consider them.

No Error.

DOUGLAS, J., concurs in result only.

FURCHES, C. J., concurring in the judgment: This action is *in forma pauperis,* and the counsel of plaintiff is the son of the Judge presiding at the trial. When the case was called for trial, the defendant called the attention of the Court to this fact, and alleged that the plaintiff's counsel was prosecuting the case under a contract for a part of the recovery as a contingent fee. The plaintiff's counsel, in arguing this motion, called it extraordinary, but did not deny the facts alleged by the defendant. The Court refused the motion, giving his reasons therefor, as set out in the opinion of this Court.

The motion was not alone made upon the ground that the presiding Judge was the father of plaintiff's counsel. If it had been made upon this ground alone, it would have been extraordinary, and contrary to the uniform practice in this Court and in the Superior Courts of the State.

The record states the mtoion as follows: "The defendant then moved to continue the case, for that, as was sufficiently shown by the petition of plaintiff to bring this suit *in forma pauperis,* his counsel, E. J. Justice, had taken the same for a contingent fee, and was therefore a partner in the suit, as much so as if his name had appeared in the summons and complaint." This was the motion, and the Judge, in assigning his reasons for refusing it (among other things) said "that he knew not, nor did he care, what arrangements coun-

sel had made with his client as to fees; that he had no interest whatever in the matter, and that he was fully conscious of his ability to try this case with absolute impartiality; * * * that out of twenty cases on the calendar, Justice & Pless appeared in eighteen of them, and this was the first case called for trial, and a continuance of this case on such grounds would set a precedent to continue the calendar and adjourn the Court."

To make a continuance of this case a precedent for continuing the other seventeen cases, would be to put them on the same footing as this case, that is, that they were all *pauper cases brought for contingent fees.* This, I am satisfied, was not the case, and the reason assigned, as I think, does his son injustice. And it may be that it does his other son injustice, as I am inclined to think it does. If the motion had been made to continue for the reason alone that the plaintiff's counsel was the son of the presiding Judge, then the grounds stated would have been correct.

The law of this State, adopting the law of England as far back as Eleventh Henry VII did not allow an attorney "to take any fee or reward" for his services in pauper suits. Revised Statutes, Chap. 31, sec. 153; Rev. Code, Chap. 31, sec. 43, which continued to be the law until the adoption of The Code, as it was regarded as a species of champetery. But that is not the law now, and probably never will be again. But it is doubtful whether there should not be some legislation with regard to such fees.

Under the law, as contained in the Revised Statutes and the Revised Code, an administrator was not allowed to bring and prosecute a suit *in forma pauperis. McKeil v. Cutler,* 45 N. C., 139. This question, so far as I am advised, has not been presented to the Court since the act of 1868-9 (Code, secs. 210, 211). But no such motion was made in this case,

and no such question is before the Court now; and I know the practice has been otherwise since the adoption of The Code.

I shall take it, then, at least so far as this case is concerned, that Mr. Justice had the right to bring this suit *in forma pauperis,* and to contract with his client for a part of the recovery as a contingent fee, and this brings up the question of his pecuniary interest in the recovery. And taking it that he had a direct pecuniary interest in the recovery, or that he was to have all the recovery, or that it had been his own action, I know of no law in this State that would have prevented his father from trying the case. This, I think, was altogether a matter of propriety with him, and for him to determine whether he would or not try the case; and I see no legal grounds upon which this exception can be sustained.