YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY v. KIRK.

[58 South. 710—834.]

1. LIMITATION OF ACTIONS. *Bar.  Necessity of pleading.  Judges.  Disqualifications.  Objections.  Necessity.  Constitution* 1890, *Sec.* 165.

The defense of the statute of limitation in bar of a civil suit for the recovery of a statutory penalty need not be specially pleaded, it may be raised by the evidence under a plea of the general issue, the same rule applying as in a criminal case where the suit involves a penalty.

2. JUDGES. *Disqualification.  Constitution* 1890, *Sec.* 165.

A judge without the consent of the parties to the suit, is disqualified to sit in a case under Constitution of 1890, section 165, so providing, where plaintiff's attorneys are his son and brother-in-law and interested in the outcome of the case, having taken the case on a contingent fee.

3. SAME.

In such case since the disqualification of the judge may be waived by the consent of the parties and the judge, his judgment is not void *per se* but only voidable, and hence his disqualification must be reasonably suggested or it will be considered waived.

4. SAME.

> Where defendant's attorneys did not learn of the facts dis-
> qualifying the judge until after a verdict in the case, an
> objection to the judge will be in time if made on a motion for
> a new trial for the first time.

5. ON SUGGESTION OF ERROR. *Limitation of Actions. Pleading. Rules
of court. Application.*

> The statute of limitations in bar of a suit for a statutory penalty
> must be specially pleaded.

6. COURTS. *Rules. Application. Supreme court.*

> The rule of the supreme court adopted January 4, 1910, has no
> application to the practice or procedure in other courts.

APPEAL from the circuit court of Yazoo county.
HON. W. A. HENRY, Judge.

Suit by G. W. Kirk against the Yazoo & Mississippi
Valley Railroad Company. From a judgment for plain-
tiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Barnett & Perrin* and *C. N. Burch* and *Mayes & Long-
street,* for appellant.

We submit that the giving of the peremptory instruc-
tion on the second trial with regard to the statutory
penalty was clearly erroneous, nor can we conceive how
the judge was led into such error. The rule with regard
to the giving of a peremptory instruction is well settled.
"In granting a peremptory instruction the court as-
sumes as true all testimony tending to establish the is-
sue in favor of the losing party." *Tribette* v. *Railroad,*
71 Miss. 212. "If there is any conflict in the evidence the
view most favorable to the party against whom the in-
struction is asked must be taken as true." *Carson* v.
*Leathers,* 57 Miss. 650. "Where there is a material con-
flict in the evidence, a peremptory instruction should not
be given." *Timberlake* v. *Compress Co.,* 72 Miss. 323.
If these decisions are not obsolete, then a perusal of

the evidence will show that every single principle announced by the decisions was violated in giving the peremptory instruction. If the rule announced in *Tribette case* is to prevail, then according to the testimony of Crook, Graham and Evans, the Kirk place was not under a common enclosure with the Stuckey place, for each one of these above witnesses unequivocally testified that there was a line fence between the two places, running east and west, yet the court held as a matter of law that the Kirk place was under a common enclosure with the Stuckey place. If the rule announced in the case of *Carson* v. *Leathers,* 57 Miss. 650, is to prevail, then it follows that the peremptory instruction should not have been given, for as to the conflict in the evidence the plaintiff testifies there was no division fence between his place and the Stuckey place; that the fence along the right of way did not join to this division fence; that the places where the right of way fence crossed the various drains were not wired, that cattle came under them, that the fence was not made effective until November, 1909. Graham testifies that there was a division fence between the Kirk place and the Stuckey place, that the fence on the right of way joined this division fence; that the drains were properly wired; that cattle could not go under them; that the fence was completed in the summer of 1909. Is this not a conflict in the evidence? Further, R. W. Crook testifies that there was a line fence between the Stuckey place and the Kirk field, and that the right of way fence through the Stuckey place was built prior to the death of J. F. Powell which occurred in September, 1909. Evans testifies that the right of way fence was completed through the Stuckey place between the first and middle of August, and that as long as he had known the places there has been a division fence between them and that the Kirk fences on the east side of his place would not turn cattle. If under the rule announced in the *Carson case* all of this testimony in behalf of the

defendant is presumed to be true, surely there was no
ground for granting a peremptory instruction. That this
testimony was not unreasonable and that it was worthy
of belief, is manifested beyond a reasonable doubt by
the verdict of the jury on the first trial of the case, and
is further strengthened by the special bill of exceptions
taken in the case and signed by the presiding judge, who
states that the only reason he granted a new trial was
from the fact that defendant had not specially pleaded
the statute of limitation with regard to the statutory
penalty, though the particular reason for not granting
the instructions along this line had not been called to his
attention, and that if the same had been done he would
have allowed an amendment to the pleading, to call this
issue to the attention of the jury for their determina-
tion.

Moreover this statute is a penal one and must be
strictly construed. Would the court hold as a matter
of law, that where a railroad, for the protection of the
crops on the plantation through which it passes, erects
and maintains fences on each side of its right of way,
that in addition thereto it would still have to maintain
a cattle guard? In other words, can the court judicially
say that the maintenance of a cattle guard under such
circumstances was necessary and proper? Was this not
necessarily a fact to be passed on by the jury, and
especially when there is no law in this state which re-
quires a railroad to fence its right of way? Can a rail-
road which has fenced its right of way on both sides
be said to enter enclosed premises? Had it not rather
under such circumstances purposely avoid entering en-
closed premises? In *Railroad Co.* v. *Sallis,* 89 Miss. 636,
it was contended by the railroad that the land of the
plaintiff was not substantially enclosed, and some evi-
dence was introduced tending to sustain this issue. The
court below nevertheless gave a peremptory instruc-
tion for the plaintiff as to the statutory penalty; on ap-

peal, the supreme court reversed the case, holding that
the matter should have been submitted to the jury.   In
the *Sallis case* there was only one point at issue.   In the
case at bar there are five different issues of fact, each
of which was taken from the jury by the peremptory in-
struction, and surely no further argument is needed to
show that this was erroneous.   If the giving of the per-
emptory instruction was erroneous, it necessarily follows
that the refusal to give the instruction asked by the
defendant was also erroneous.

The first verdict should be reinstated.   It will be ob-
served from the record of the first trial, that no ob-
jection whatever was made to any testimony going to
show that the fences had been completed more than a
year prior to the filing of the suit.

In fact the plaintiff was particular in trying to dis-
prove this fact, recalling the witness Graham and at-
tempting to discredit him by his testimony on a former
trial.   It will also be noted from the special bill of ex-
ceptions taken at the time the new trial was granted, that
it was so granted solely on the ground that defendant
had not specially pleaded that statute of limitation, the
court in said bill of exceptions stating that no objection
had been raised by the plaintiff at the time of the giving
of the instructions, and that if such objection had been
made the court would have allowed an amendment so as
to properly present the issue to the jury.   The instruc-
tions so given were filed at the time, read and submit-
ted to the jury, without the semblance of any protest on
the part of the plaintiff, and the very point fully argued
by counsel on both sides to the jury.   Under these cir-
cumstances doesn't it look like the plaintiff was trifling
with justice, that it was a case of "heads I win and tails
you lose," and that when he refused to make objection
at a time when the objection could be met by amendment,
that he would not be allowed to do so later, to the prej-
udice of the defendant?   We are not without authority

for this position. In the case of *Ga. Pac. Ry. Co.* v. *West*, 66 Miss 310, the plaintiff in her declaration stated as the only ground of negligence on the part of the defendant was that it suffered and permitted its locomotive and coach to start while the plaintiff was leaving the train. The court below gave an instruction for the plaintiff, No. 3, which charged the jury that it was incumbent upon the defendant to stop its cars at such a part of the platform as would make it safe for the plaintiff to get off, etc. On motion for new trial and on appeal the point was made that this instruction was not in the scope of the pleadings. Relative to it the court says: "We are not disposed to regard the objection to the instruction on the ground of want of applicability to the issue made by the pleadings, since if it had been urged in the court below, when the instructions were presented and found valid, an immediate amendment should have been ordered."

Now note that by the special bill of exceptions it is shown not only that no objection was raised to the instructions as not in accordance with the pleadings, but if the same had been made, that court would have allowed an amendment. It will also be noticed that the instructions are not objected to on any other ground than that they are not in accordance with the pleadings; in other words, that they are correct, but for the failure to specially plead the statute of limitations. This being so, if it was error under the circumstances of this case, the instructions being applicable to the proof, no objection being raised to them, they being filed and submitted to the jury and argued before them, does it not necessarily follow that the ends of justice demand that the first verdict be reinstated? Should there not be an end to litigation? Should the defendant, where a case has been fairly submitted on the facts, and proper instructions, be further harassed because the court erroneously set aisde the first verdict?

We have not commented on the apparent ineligibility of the presiding judge to try this case. We admit, that knowing him as we did, we were surprised that he should have hesitated. We thought that he would follow the supreme court in the case of *Lamar Insurance Co.* v. *Hines,* where an opinion had been rendered, and it was afterwards called to the attention of the supreme court that one of the justices was related to an attorney who had a contingent interest in the case, the result that the first opinion was set aside and a special judge was appointed to decide the point at issue. On the general idea that all judgments of the court should be like Caesar's wife, above suspicion, we did not doubt that this verdict, under the peculiar circumstances of the .case, would be set aside and the presiding judge recuse himself.

On the whole case we submit that the judgment on the second trial should be set aside, and that the verdict on the first trial should be reinstated.

*Barbour & Henry,* for appellee.

The cases of *John W. Parker* v. *B. F. Johnson,* 47 Miss. 632; *Bridgeforth* v. *Payne,* 62 Miss. 777 and *Lewis* v. *Bucley,* 73 Miss. 58, all of which hold that statutes of limitations must be specially pleaded, settled the question of the granting of a new trial in this case by the circuit judge in favor of the appellee. The railroad company had no right to go to the jury on instructions giving them the benefit of the statute when the same had not been pleaded. Aside from this, however, a review of the testimony in the first trial will show that if the statute had been pleaded, the instructions would not have been proper under the evidence, for the reason that the plaintiff proved unequivocally that the extension purporting to rebut this being that of Graham, who first said the fence was built in 1908, and finally admitted that he did not know when it was built. Moreover, if it had been

asked, plaintiff in the first trial was entitled to a peremptory instruction. For this reason we admit that the shock was great when the jury reported in favor of the defendant.

The first verdict was very properly set aside, and under no finding by this court could it properly be reinstated. The case was tried again on its merits, the result being the peremptory instruction by the court as to the statutory penalty and the award by the jury in addition thereto of compensatory damages in the sum of one hundred dollars.

There is nothing in the point raised as to the qualification of the judge. Local counsel for the railroad who prepared the brief knowingly went out of his way to be unfair and unjust to the trial judge when he said: "We admit that knowing him as we did, we were surprised that he should have hesitated," well knowing at the time he wrote it that the record shows that the judge knew nothing of the contingent interest of attorneys. Therefore, there is nothing in that point that makes the verdict at all suspicious and it fully meets the standard laid down that it should be like "Caesar's wife, above suspicion." (We suppose he once heard of Caesar's wife, and couldn't remember the name.) He is also mixed on his facts with reference to the Hines case. We can find nothing in the reports in 95 Miss. 477 to indicate that the suggestion of error was sustained because of any relationship of judge and attorney. It is hardly necessary to invite the attention of this court to their interpretation of section 165 of the Constitution, as it appears in the first paragraph on page 11 of 95 Miss., but suggest to the counsel who wrote the brief for appellant that he might with profit peruse the same.

We find no authorities of any state which hold a judge disqualified because of relationship to any attorney having a contingent interest, and though we think the interpretation by this court sufficient, we cite as other au-

thorities upholding this contention *Matter of Dodge & Stevenson Mfg. Co.,* 77 N. Y. 101, 33 Am. Rep. 570; and *Hundley et al.* v. *State ex. rel. Milton,* 36 So. Rep. 362.

There is no error in this case and it should be promptly affirmed.

Cook, J., delivered the opinion of the court.

This case was twice tried in the circuit court of Yazoo county. At the first trial the defendant below, appellant here, succeeded in convincing the jury that it was not guilty. This verdict was set aside by the court and a new trial granted. A special bill of exceptions was presented to the trial judge and signed by him. When the case was tried a second time, the verdict of the jury was for the plaintiff. A motion for a new trial was overruled. So it is the action of the court in sustaining the first motion and overruling the second is before us for review. The same judge presided at both trials.

The suit was instituted to recover the statutory penalty and actual damages resulting from alleged failure of the railroad company to construct and maintain necessary or proper cattle guards where its track passed through plaintiff's inclosed lands. The one-year statute of limitations was invoked in both trials to defeat plaintiff's recovery of the statutory penalty. The statute was not specially pleaded, but evidence was given tending to establish the bar of the statute. In the special bill of exceptions it is stated by the judge that he had sustained the motion to set aside the verdict of the jury solely because the defendant had not claimed the bar in his pleadings. We think the reason given by the judge for his rulings was unsound, as the defense may be raised by the evidence and under the plea of the general issue. The rule is analogous to the rule in criminal cases where the suit involves a penalty. Ency. Plead. & Prac., vol. 13, p. 282, and cases there cited. However, the ruling may

have been correct, though the reason upon which it was based may be fallacious; it being doubtful whether there was any evidence to support the bar.

At the second trial the court peremptorily directed the jury to find for the plaintiff the statutory penalty, and also for all damages which the evidence showed resulted from the failure of defendant to perform its statutory duties. Of course, the verdict of the jury was responsive to the directions of the court. As to whether or not the court erred at either or both trials is a close question, and the court may be affirmed or reversed without doing serious violence to the law or the record. The above review of the history of the case is set out for the purpose of emphasizing our views hereinafter expressed upon the important and far-reaching question which is involved in the determination of the rights of the parties to this suit.

Passing by the other issues raised by the record and discussed in the briefs of counsel, and they are many, we come to the determining factor in the case. In the motion made by apellant to set aside the verdict of the jury and grant it a new trial, we find the following suggestion, viz.: "Because Hon. W. A. Henry, the presiding judge, was incompetent to hear the case, for the reason that Messrs. Barbour and Henry, who were counsel for the plaintiff, are both related to said presiding judge, the former being a brother-in-law and the latter a son, and said Barbour & Henry had said case upon a contingent fee. That the assignment of said interest of said Barbour & Henry was not filed with the papers, and was not known to counsel for defendant until after said cause was tried." Upon the hearing of the motion, an agreement was introduced in evidence, and reads as follows: "It is agreed in this case that there was no assignment in writing to the attorneys, but that it was agreed with the plaintiff, Kirk, that they were to be paid a certain percentage of the recovery as compensation for their

services; that this fact was not known to the attorneys for the defendant until after the trial, and that the circuit judge knew nothing of what the agreement between the plaintiff and his attorneys was until the matter was presented on this motion. It is also admitted that J. F. Barbour is the brother-in-law, and W. A. Henry, Jr., is the son, of the presiding judge.''

This presents a question to this court of paramount importance to litigants in the courts of the state, as well as to the general public. All are interested in the integrity, independence, and impartiality of the judiciary, the most important and powerful branch of our government. Not only must the judges presiding over the courts be honest, unbiased, impartial, and disinterested *in fact,* but it is of the utmost importance that all doubt or suspicion to the contrary must be jealously guarded against, and, if possible, completely eliminated, if we. are to maintain and give full force and effect to the high ideals and salutary safeguards written in the organic law of the state. The first clause of section 165 of the Constitution reads as follows: ''No judge of any court shall preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may. be interested in the same, except by the consent of the judge and of the parties.'' The only difficulty in construing this constitutional limitation upon the power of judges to preside in the trial of causes lies in the interpretation and definition of the word ''parties.''

The courts of sister states have been called upon to define this word, appearing in statutes designed to cover the same conditions provided for in our Constitution. Some of the courts have adopted the narrow and technical signification of the word, and confined its application to parties to the record *eo nomine,* while others have given a broader and more liberal meaning to the statute by holding that by ''parties'' was meant every person

who had a pecuniary interest in the lawsuit, whether
their names were mentioned in the pleadings or not. The
Alabama court, speaking of a statute similar in its pro-
vision to our Constitution, says: "The purpose of the
statute is to secure to litigants a fair and impartial trial,
by an impartial and unbiased tribunal. Next to the im-
portance of the duty of rendering a righteous judgment
is that of doing it in such manner as will beget no suspi-
cion of the fairness or integrity of the judge." *Cook* v.
*Newberg,* 124 Ala. 479, 27 South. 432, 82 Am. St. Rep.
190. "The principle of disqualification is to have no
technical or strict construction, but is to be broadly ap-
plied to all classes of cases where one is appointed to
decide the right of his fellow citizens. Disqualifying
statutes are not to be construed in a strict, technical
sense, but broadly, with liberality. The term 'party,'
used to indicate persons to whom the judge is related,
and who are considered with the litigation, is not con-
fined to parties of record." 12 Am. & Eng. Ency. Law,
pp. 41, 42, notes 3, 4.

The Supreme Court of Texas, construing a statute
which contains substantially the same language as the
clause of our Constitution, said: "A narrow or con-
tracted construction of the term 'party,' which confines
it to the very person named on the docket as such, would
often defeat the end in view of having justice impartially
administered, free from the bias and influence produced
by the interest held in the cause by the judge or his re-
lations." No judge can sit who is of such affinity to
either party that he might be challenged as a juror, and
there can be no doubt but that the statute extends to the
party beneficially interested, as well as the real party.
*Hodde* v. *Susan,* 58 Tex. 394. See, also, *Moses* v. *Julian,*
45 N. H. 52, 84 Am. Dec. 114.

In the case of *Roberts* v. *Roberts,* 115 Ga. 259, 41 S. E.
616, 90 Am. St. Rep. 108, the Supreme Court of Georgia,
construing the word "party" in a statute referring to

the same subject-matter that is referred to in section 165 of our Constitution, said: "If one not a party to the record, but directly and pecuniarily interested in the result of the cause, would be such a party thereto as to disqualify one of his kinsmen from being a juror, he would also be such a party as to disqualify his kinsman from presiding as a judge."

In Arkansas a lawyer engaged in the trial of a cause suggested to the court that R. C. Bullock, one of the attorneys in the case, was interested in the trial of said cause, and his fee depended upon the rendition of a judgment in favor of his client; that said R. C. Bullock was related to the judge presiding at the trial, and for this reason he asked the judge to decline to preside at the trial. The judge seemed to be very sensitive where he considered his judicial dignity was involved, and fined the lawyer for contempt. The lawyer appealed to the Supreme Court of the state. The Constitution of the state of Arkansas provides that "no judge or justice shall preside in the trial of a case in the finding of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity." Const. Art. 7, Sec. 20. The Supreme Court of Arkansas, construing this provision of the Constitution, said: "While the Constitution speaks of a party to a cause, we are of the opinion that, both upon sound reason and according to the weight of authority, the word should not be construed in a technical and restricted sense to mean a party to the record, but it should be held to mean any one who is pecuniarily interested directly in the result of the suit, although not a party to the record and not necessarily bound by the judgment. Any other construction totally disregards the spirit and defeats the purpose of the constitutional prohibition, for if a judge may be influenced at all in his judgment by the fact that a person who is directly interested in the result of the suit is related to him, the potency of the

influence is not lessened by the absence of the related party from the record.'' The court overruled the chancellor in adjudging petitioner to be in contempt, because the motion suggested legal ground for disqualification of the chancellor. *Johnson* v. *State,* 87 Ark. 45, 112 S. W. 143, 18 L. R. A. (N. S.) 619, 15 Ann. Cas. 531.

As before said, some of the other states place a more technical and restricted construction upon the meaning of the word ''party'' and the case of *Allison* v. *Railroad,* 129 N. C. 336, 40 S. E. 91, is quoted by many of the courts as authority for the proposition that a judge is not disqualified because of the relationship of an attorney who is interested in the suit, when the fee of such lawyer depends upon the result of the suit. We think a careful reading of this case will demonstrate that there is no statutory or constitutional prohibition in the state of North Carolina, and for this reason the North Carolina court has adhered to the common law rule, which only disqualified judges because of some interest of their own in the result of the suit to be tried.

We are convinced that the broad and liberal rule of construction is the soundest and wisest rule, and, adopting this rule as our guide, we conclude that the circuit judge was disqualified to preside at the trial of this case. If the numerical weight of authority rested with the narrow view, we would unhesitatingly follow the lead of those courts adopting the broad and liberal construction of statutes and constitutions similar in language to our own Constitution. In the absence of precedent, we would feel constrained to create a precedent in harmony with our views. Every litigant is entitled to nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interests of the parties involved in the litigation, whether that interest is revealed by an inspection of the record or developed by evidence *aliunde* the record. The real parties in interest furnish the reason for the judge

to recuse himself when it becomes known that they are related to the judge, although they may not be parties *eo nomine.*

Was the suggestion made in time by appellant? The facts were called to the attention of the court by the motion for a new trial, and while the case was still within his control. It was also admitted that appellant's attorney did not know of the interests of appellee's attorneys in the litigation until after the trial. We think the point was made in time.

Since the disqualification of the judge may be waived by the consent of the parties and of the judge, his judgment was not void *per se,* but simply voidable. It follows, therefore, that the disqualification of the trial judge must be seasonably suggested; that is to say, whenever a knowledge of his disqualification comes to the complaining interest, should such party "sit down upon the stool of do nothing," he will be held to have waived the disqualification of the judge and to have consented to his presiding in the cause.

In some jurisdictions it is held that the statute disqualifying the judge deprives him of all jurisdiction, and for this reason his acts are absolutely void. These decisions are usually based on the peculiar language of the statutes construed, and which, as a general proposition, in their very terms disqualify the judge when his own interest, or the interests of a relative, may be affected by the decisions of the judge, and for this reason his judgment is entirely incapable of being made good, even by express consent. It will be noted that our Constitution provides that the disqualification may be waived by consent, and it is our opinion that consent will be conclusively presumed after the case has gone to final judgment, unless it affirmatively appears that the suggestion of the disqualification of the judge was made at some time before final judgment.

A very exhaustive and interesting collation of the authorities touching the void and voidable judgments of disqualified judges may be found in the notes to the New Hampshire case of *Moses* v. *Julian,* reported in 84 Am. Dec. 14.

And for the reasons given above, the case is reversed and remanded.

*Reversed and remanded.*

### ON SUGGESTION OF ERROR.

COOK, J., delivered the opinion of the court.

In response to the suggestion of error, we desire to say that we entertain no doubt as to the soundness of our views, expressed in the opinion heretofore rendered, touching the disqualification of the trial judge.

We recede from the rule of pleading laid down by us in the opinion, and now say that the statute of limitations must be specially pleaded, and the trial court was correct in so ruling.

The rules of this court, adopted January 4, 1910 (54 South, v.), have no application to the practice or procedure in other courts, and this is manifested by the language employed in the rules adopted. This court has no authority to prescribe rules for the government of trial courts, and has never attempted to usurp such power.

The order heretofore entered, reversing and remanding this cause, is affirmed.

*Affirmed.*