## WARD v. SOUTHERN SAND & GRAVEL CO.

### In re CLAIM OF THEW SHOVEL CO.

District Court, M. D. North Carolina, Greensboro Division. June 29, 1929.

No. 19.

J. C. Pittman, of Sanford, N. C., and Tidwell & Brown, of Atlanta, Ga., for Thew Shovel Co.

A. A. F. Seawell and Clawson L. Williams, both of Sanford, N. C., for receivers.

Julius C. Smith, of Greensboro, N. C., for Ward.

HAYES, District Judge. The Southern Sand & Gravel Company, Inc., is a Delaware corporation, with its home office at Wilmington, Del. It filed with the secretary of state of North Carolina its application to do business in this state as required by the provisions of section 1181, C. S. N. C. In its application it designated Sanford, N. C., as its principal place of business in the state. The corporation's chief business was the mining and selling of sand and gravel, and its plant was located in Harnett county, N. C. Sanford is in Lee county.

The said Southern Sand & Gravel Company gave a written order and executed a conditional sales contract to the Thew Shovel Company for a steam shovel which was to be shipped from Lorain, Ohio, to the plant in Harnett county, at Luart Siding. The contract was made at Sanford, and the representative of the Thew Shovel Company was led to believe that Sanford was the home office of the company.

Section 3312 of the Consolidated Statutes N. C., requires all conditional sales of personal property to be registered in the same manner and with the same legal effect as is provided for chattel mortgages in the county where the purchaser resides, or in case the purchaser shall reside out of the state, then in the county where the personal estate or some part thereof is situated. The Thew Shovel Company registered the contract in Lee county but did not register it in Harnett county, where the property was situated, until long after it came into the custody of the court through the receivers, who were directed to convert the assets of the company into cash for distribution among the creditors.

C. S. N. C. § 3311, deals with the registration of chattel mortgages, and reads as follows: "No deed of trust or mortgage for

774

real or personal estate shall be valid at law to pass any property as against creditors or purchasers for a valuable consideration from the donor, bargainor or mortgagor, but from the registration of such deed of trust or mortgage in the county where the land lies; or in case of personal estate, where the donor, bargainor or mortgagor resides; or in case the donor, bargainor or mortgagor resides out of the state, then in the county where the said personal estate or some part of the same, is situated; or in case of choses in action, where the donee, bargainee or mortgagee, resides. For the purposes mentioned in this section the principal place of business of a domestic corporation is its residence."

The Thew Shovel Company filed its petition asking for the release of this property on the ground that its contract was registered in Lee county, the home office of the Southern Sand & Gravel Company. The receivers contend that the sand and gravel company is a foreign corporation and resides out of the state and that the conditional sale contract is not valid because it was not recorded in Harnett county.

The Supreme Court of North Carolina has held that an unregistered conditional sale is invalid as against an assignment for the benefit of creditors duly registered. Coble & Starr v. Wharton, 177 N. C. 323, 98 S. E. 818. It has held the same as against the rights of a trustee in bankruptcy since the amendment of 1910 (11 USCA § 75(a), cl. 2). Hinton v. Williams, 170 N. C. 115, 86 S. E. 994. A conditional sale is valid against creditors and purchasers for value only from registration. Observer Co. v. Little, 175 N. C. 42, 94 S. E. 526. Unless the Southern Sand & Gravel Company was a resident of Sanford, Lee county, the conditional sale contract is invalid as against the receivers in this case because the mortgage was not recorded in Harnett county in due time. It is to be borne in mind, however, that the receivers in this case are not mere custodians for the benefit of the corporation, but that the corporation is insolvent and is being administered in equity for the benefit of the general creditors, and that this court had acquired jurisdiction and possession of the property before the contract was recorded in Harnett county.

Since the Legislature, in C. S. § 3311, designates the principal place of business of a domestic corporation as its residence for the purposes of this section, but makes no reference to a foreign corporation licensed to do business in this state, the rea-sonable inference is that the Legislature treated such corporations as nonresidents. It is presumed that the Legislature enacted its laws with a knowledge of the interpretation of existing laws by the Supreme Court of the state. The Supreme Court of North Carolina has held that a domestic corporation of the state has no residence. Cline v. Manufacturing Co., 116 N. C. 837, 21 S. E. 791; Farmers' State Alliance v. Murrell, 119 N. C. 124, 25 S. E. 785. The latter decision was rendered by the court at the September term, 1896. C. S. § 3311 [Revisal of 1905, § 982], was amended by the Legislature of 1909 by adding to it this sentence: "For the purposes mentioned in this section the principal place of business of a domestic corporation is [shall be considered to be] its residence." N. C. Public Laws 1909, chap. 874. While it is true that the two cases mentioned above were ones construing C. S. § 469, on the question of venue, yet the language there is identical with the language in the statute as to the registration of mortgages and conditional sales. The venue statute, C. S. § 469, provided: "In all other cases the action must be tried in the County in which the plaintiffs or the defendants, or any of them, reside at its commencement; or if none of the defendants reside in the State, then in the county in which the plaintiffs, or any of them, reside; and if none of the parties reside in the State, then the action may be tried in any county which the plaintiff designates in his summons and complaint. * * *" So the Supreme Court held that a domestic corporation under this section could be sued in any county in the state because it had no residence in any particular county.

If a domestic corporation is without a residence in any one county without legislative enactment fixing a residence, how could it be contended that a foreign corporation is a resident of any particular county in this state? The only inference deducible from the decisions of the highest court of the state and from the statutes is that foreign corporations are treated as nonresidents in this state, and that the proper place for the recordation of mortgages executed by a foreign corporation is in the county where the personal property or some part thereof is situated.

The compliance by a foreign corporation with the requirements of C. S. § 1181, does not make the foreign corporation a resident of the state, or of the county where its principal office is located for the purposes of C. S. §§ 3311 and 3312. This statute is nothing

more than a license to do business in North Carolina. It does not deprive the foreign corporation of its right of removal to the federal courts. Southern Ry. Co. v. Allison, 190 U. S. 326, 23 S. Ct. 713, 47 L. Ed. 1078, reversing Allison v. Southern Ry. Co., 129 N. C. 336, 40 S. E. 91. Formerly, a compliance with this section made the corporation a domestic corporation of North Carolina, but that provision of the statute was repealed in 1903. N. C. Pub. Laws 1903, chap. 76. The repeal of that portion of the statute evinces an intention on the part of the Legislature to treat it as a license to do business instead of domesticating the foreign corporation. The chief purposes of this provision were to enable a litigant to obtain service of process on the foreign corporation in this state, and incidentally to collect a tax on the foreign corporation for the privilege of transacting business in this state. C. S. § 1137, provides in part as follows: "Every corporation having property or doing business in this state, whether incorporated under its laws or not, shall have an officer or agent in this State upon whom process in all actions or proceedings against it can be served. A corporation failing to comply with the provisions of this section is liable to a forfeiture of its charter, or to the revocation of its license to do business in this state."

A corporation can have no legal existence outside of the boundaries of the sovereign by which it is created. It has its domicile in the state which created it, and it cannot acquire a domicile in another state, although it may have an office and do business there. Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451; Germania F. Insurance Co. v. Francis, 11 Wall. 210, 20 L. Ed. 77. And for the same reason a corporation cannot be a resident of another state than that in which it is created. Such is the uniform construction of statutes in which the term "resident" or "nonresident" is used, where the question is presented whether a foreign corporation is included in the term. See cases cited in Clark on Corporations (2d Ed.) p. 67. It cannot change its residence, but must dwell and have its sole legal existence and home in the state where it is chartered. In re Schollenberger, 96 U. S. 369, 24 L. Ed. 853. It may be allowed to transact business outside of the home state, but it does not by doing so acquire a residence elsewhere. Germania F. Insurance Co. v. Francis, supra. See Martin v. B. & O. R. R. Co., 151 U. S. 673, 14 S. Ct. 533, 38 L. Ed. 311. See other

authorities cited in note in 18 A. L. R. page 135.

The facts in our case are practically the same as those in the case of Whitney v. Browne, 180 Mass. 597, 62 N. E. 979. The claimant there failed to record the mortgage in the town where the property was situated. The mortgagor was a foreign corporation, being chartered in Maine and licensed to do business in Massachusetts, with its office in Boston and its factory in Winchester. It was held that the mortgagee lost his lien by his failure to record the mortgage in the town (the Massachusetts statute requires recordation in towns instead of counties) where the property was situated.

The representations by the officials of the Southern Sand & Gravel Company that its principal office or its home office was located in Sanford, N. C., cannot take the place of the registration of the mortgage as against the creditors of the corporation. Equity follows the law. The laws of the state of North Carolina require chattel mortgages or conditional sales to be recorded in the county where the property or some part of it is situated, if the bargainor resides out of the state. Failure to so record it deprives the seller of any lien as against the creditors. See Fairbanks Steam Shovel Co. v. Wills, Trustee, 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841.

The petition for the release of the property is therefore denied.