### SANDLIN v. WESTON, Judge.

No. 23682. Opinion Filed Feb. 21, 1933.

D. Hayden Linebaugh and Stone, Moon & Stewart, for plaintiff.

Biggers, Fowler & Biggers and Ira J. Banta, for defendant.

McNEILL, J. This is an original action brought in this court seeking a writ of mandamus to require the Honorable J. Henry Weston, county judge of Seminole county, to disqualify in the matter of the guardianship of Freelin Pruitt, a minor, in cause No. 2479, pending in the county court of said county. It appears that said minor has had different guardians appointed by said court, and that, in 1929, G. L. Sandlin, plaintiff herein, and W. E. Harber were jointly acting as his guardian. In 1929, a case was instituted in the district court of said county on behalf of said minor for the cancellation of a certain oil and gas lease on property belonging to said minor executed by a former guardian. On January 6, 1932, a judgment was rendered on behalf of said minor for the cancellation of said lease and for an accounting of the oil and gas taken from said property. On November 12, 1930, said Sandlin filed his report of his proceedings as such guardian from the date of his appointment on April 2, 1928, to November 8, 1930, which shows that he had received moneys belonging to his ward amounting to the sum of $32,581.35, and during that period of time had expended $31,952.25; no receipts or vouchers were attached or filed with said report. On January 18, 1932, Eugene Walker, the grandfather of said ward, filed in said guardianship proceedings a motion charging and alleging that the report of said plaintiff, Sandlin, filed on November 12, 1928, was false and untrue; that said guardian had dissipated the funds of said minor. Said Walker prayed that said guardian be cited in court to show why he should not be removed as such guardian; on the same date that said Walker filed said motion of January 18, 1932, the county judge, defendant herein, caused a citation to be issued and served on said Sandlin commanding him to appear before the county judge on February 2, 1932, to show cause why he should not be removed as such guardian. On

February 16, 1932, the court made an order that said Sandlin be suspended as guardian of the person and estate. On March 1, 1932, the defendant made an order requiring the plaintiff to file a final report in said guardianship in said matter. On March 9, 1932, plaintiff filed a report therein, attaching thereto a final receipt from said ward, dated February 17, 1932, reciting in said report that said minor arrived at the age of 21 years on December 25, 1931, and submitting with said report his receipt showing full and complete settlement with said minor and certain affidavits in support of the age of said minor.

On April 12, 1932, Elmer Harber, coguardian of said minor, filed a petition in the county court of Seminole county, in which he alleged that he had procured an audit of the records of the State Auditor's office to determine the exact amount of moneys and royalties collected by said Sandlin as such guardian, and that such audit disclosed that said Sandlin actually received the sum of $43,061.01, being the sum of $10,479.66 over and above the amount reported by said Sandlin in his guardian report; that said Sandlin did not account for said sum and prayed the court to make a demand on said Sandlin for the payment of said $10,479.66, in addition to the moneys heretofore reported by said guardian. On the same day, to wit, April 12, 1932, said defendant, as county judge, made an order and demand on said Sandlin for the immediate payment in said court for said sum of $10,479.66, finding that the report heretofore filed by said guardian was erroneous, inaccurate, and false, and that he had failed, neglected, and refused to account for or report the collection of said sum of $10,479.66. It appears from the record that said order, demand, and finding by said county court was made without notice to said Sandlin.

On April 14, 1932, said defendant issued in said guardianship cause an order to any sheriff, deputy, or constable of the state of Oklahoma, wherein it was recited that said Sandlin had received the sum of $32,581.35, as shown in his report filed in said cause, when in truth and in fact he had received the sum of $43,071.01; also reciting the fact that heretofore, on the 1st of March 1932, said court had made and entered its order requiring said guardian to make and file his final report; that said guardian had failed and refused to file any detailed report of his doings as guardian and reciting that said court had heretofore ordered the said Sandlin to appear before said court to show why he should not be punished for disobedience to the orders of said court, and directing and commanding said officers to immediately arrest and bring before the said court said Sandlin. Pursuant to said order said Sandlin was arrested and brought before the county court on April 16, 1932. A hearing was had before defendant on said date. Said Sandlin was represented by counsel at said hearing and requested a continuance. The court refused to grant such continuance. Mr. Huser was counsel for said Sandlin and moved the court to quash and set aside the process served upon said Sandlin on the ground the same was null and void. A part of the proceedings follow:

"By the Court: The motion is overruled. Give him an exception. By Mr. Huser: Give us an exception. By Mr. Biggers: Call Mr. Sandlin. By Mr. Huser. If they are going to put Mr. Sandlin on the stand I am in earnest about this motion. By the Court: I gave you an exception and if I am wrong there is a court higher than I am that can correct it. By Mr. Huser: I am not criticizing your action here I am __ (interrupted) By the Court: Stand up and be sworn, Mr. Sandlin. * * * By the Court: Take the stand Mr. Sandlin. By Mr. Huser: Wait just a minute, now if the court please, this is the first contact I have ever had in this guardianship. By the Court: I appreciate all of that, Mr. Huser, but it is not the first contact I have had with it, this is the first time I have ever got the guardian to even recognize this matter and I want to interrogate him about it. By Mr. Huser: Don't you think that as a matter of courtesy I ought to have an opportunity—(interrupted) By the Court. He has changed horses four times within the last 30 days. By Mr. Huser: Can't you give us a reasonable continuance? By the Court: No: I expect to hear him testify as to his acts and doings."

From this record, it appears that Standlin at the hearing was not examined as to the financial matters of said estate, but the same was directed to the whereabouts of the minor, and the keeping of said minor outside of the jurisdiction of the court. At the conclusion of said hearing said defendant, as county judge, entered an order committing said defendant to the county jail of said county until such time as he answered questions and complied with the orders of the court heretofore made. Said order directed him to produce said ward before said court, to file his report as such guardian, and to execute and file a good and sufficient bond as such guardian. Said committal was to run for a period of three months, or until the further order of said court. In said order the court made findings that said guardian had failed to obey the orders of said court directing him to file reports and bond as such guardian and to bring his

said ward into court; that said guardian was guilty of obstructing justice or orderly process of said court by willfully keeping his ward out of the jurisdiction of said court; that said Sandlin willfully refused to answer questions legally propounded concerning his administration of said estate and the whereabouts of said ward, and he was adjudged to be in direct contempt of said court. Thereafter said plaintiff made application for a writ of habeas corpus before the superior court of said county, and said plaintiff was released. Thereupon, on May 10, 1932, the said W. E. Harber, as joint guardian of the estate of said minor, filed a complaint in said guardianship matter to the effect that said Sandlin had failed and neglected to report and account to said court for the oil royalties, moneys, and effects received by said Sandlin for the use and benefit of said minor.

The county court, on May 10, 1932, entered an order that said G. L. Sandlin as guardian of the person and estate of said minor have and produce the body of said minor before said court on the 24th day of May, 1932, at 10 a. m., and at the same time caused to be issued a citation as follows:

"It is ordered by the court that you, the said G. L. Sandlin, be and you are hereby cited to appear before said court and the judge thereof on the 24th day of May, 1932, at 10 a. m., at the county courthouse of said Seminole county, state of Oklahoma, for examination upon the matters of said complaint, and hereof fail not."

At the time stated in said order and citation, said plaintiff appeared in said county court in person and by his attorneys and filed an application and request that said county judge disqualify himself in the hearing of said matters. Said defendant refused to disqualify as such county judge, and the matter was continued until opportunity was given to file the instanter application for a writ of mandamus in said court to require said county judge to disqualify as county judge in said matter. Plaintiff alleged in his application that said county judge is biased and prejudiced against him personally and dislikes him for personal and political reasons; that said defendant heretofore caused plaintiff to be arrested and placed in jail in said Seminole county and that said plaintiff was required to obtain his release through habeas corpus proceedings; that said defendant has ordered said plaintiff to compel said minor to appear before said county judge of said county court; that said plaintiff has no legal control over said minor who is now over the age of 21 years; that said plaintiff has information and believes that said Freelin

Pruitt intentionally remains outside of Seminole county, because he fears that certain designing persons intend to have a guardian appointed over him as an incompetent in order to obtain possession, custody, control, use of, and charge of his estate belonging to him.

The defendant in his return to the alternative writ of mandamus issued in this court May 25, 1932, sets forth the various proceedings of record in said guardianship matters and denies being conscious of any feeling of enmity for or bias or prejudice against said plaintiff; denies that he dislikes or entertains any prejudice against plaintiff for any reason; denies that he has improperly discussed this or any other proceedings in which the plaintiff is or has been connected out of court as alleged in the affidavit of plaintiff and that he is prejudiced in matters connected with the hearings. Said defendant further states that each and all of his acts in connection with or concerning said plaintiff and the estate of said Freelin Pruitt have been in an earnest and conscientious effort to discharge what he conceived as his duty as county judge and to ascertain the true condition of said estate of said Freelin Pruitt, a ward of his court, and to see that the rights of said ward in and to said estate are properly safeguarded.

The record indicates on its face that all was not smooth sailing between the plaintiff as guardian of said minor and the county judge. During the hearing on April 16, 1932, there were manifested certain impatience and lack of toleration on the part of the county judge due possibly to the guardian attempting to circumvent the orders of the county judge. A review of this record indicates that the conditions as now existing ought not to be present in an orderly trial of a contested matter. We are of the opinion that the county judge is not free from bias and prejudice occasioned by the many orders and proceedings had in said guardianship matter. It also appears that the name of the defendant is indorsed on the complaint filed before the justice of peace charging said plaintiff with embezzlement of funds of said minor.

The defendant has at all times the right to rely upon section 6, art. 2, of the Constitution. That is a pillar in the framework of our judicial procedure which guarantees to every one that "right and justice shall be administered without sale, denial, delay, or prejudice." It is the duty of this court to maintain and safeguard the right of trial by a fair and impartial tribunal and to be vigilant in removing and eliminating every

possible semblance of doubt or of suspicion on that question to the end that justice may be administered.

In the case of State ex rel. Warner v. Fullerton, District Judge, 76 Okla. 35, 183 P. 979, it is said:

"Courts should scrupulously maintain the right of every litigant to an impartial and disinterested tribunal for the determination of his rights. All are interested in the integrity, independence, and impartiality of the judiciary, the most important and powerful branch of our government. Judges presiding over the courts should be unbiased, impartial, and disinterested in the subject-matter in litigation, and it is of the utmost importance that all doubt or suspicion to the contrary be jealously guarded against, and, if possible, completely eliminated, to the end that we may maintain and give full force and effect to the high ideals and salutary safeguards written in the organic law of the state. State ex rel. Mayo v. Pitchford, 43 Okla. 105, 141 P. 433; Yazoo & M. V. R. Co. v. Kirk, 102 Miss. 41, 58 South. 710, 834, 42 L. R. A. (N. S.) 1172, Ann. Cas. 1914C, 968."

In the case of Son v. Linebaugh, 101 Okla. 291, 225 P. 686, this court said:

"While the respondent insists that he is not unfriendly to either of the petitioners, and that he can accord them a fair and impartial trial, and while we do not doubt his sincerity in this regard, yet the question is not so much whether he feels that he would be able to give the petitioners a fair and impartial trial, as whether his utterances and actions preclude reasonable men from feeling that a fair and impartial trial can be had before him, and that he is disinterested in the result."

We are of the opinion that to compel the plaintiff to be tried before the defendant under the facts and circumstances as revealed by this record would be discordant to the intent and meaning of section 6, art. 2, of the Constitution, supra.

Writ granted.

RILEY, C. J., CULLISON. V. C. J., and SWINDALL., ANDREWS. OSBORN, BUSBY, and WELCH, JJ., concur. BAYLESS, J., absent.