LAYDEN v. ENDOWMENT RANK, KNIGHTS OF PYTHIAS OF
THE WORLD.

(Filed June 7, 1901.)

1. CORPORATIONS—*Foreign Corporations—Domestic Corporations
   —Insurance Companies—"Craig Act"—Acts 1899, Ch. 62.*

   A fraternal insurance company, incorporated under act of Con-
      gress, for the District of Columbia, becomes a domestic cor-
      poration by complying with Acts 1899, Ch. 62.

2. REMOVAL OF CAUSES—*Foreign Corporations—Domestic Cor-
   porations—Acts 1899, Ch. 62.*

   A corporation chartered under act of Congress, for the District
      of Columbia, having domesticated under Acts 1899, Ch. 62,
      can not remove a cause from the State courts to the Federal
      courts, when sued by a citizen of the State as a domestic
      corporation and no federal question is disclosed.

ACTION by Minnie C. Layden against the Endowment
Rank of the Knights of Pythias of the World, heard by Judge
*H. R. Bryan,* at September Term, 1900, of the Superior
Court of DAVIDSON County.

The following is the statement of the case on appeal. This
was a civil action returnable to Fall Term of the Superior
Court of Davidson County, held on the first Monday in Sep-
tember, 1900, *H. R. Bryan,* Judge, presiding, for the re-
covery of three thousand dollars ($3,000) upon an insurance
policy issued by defendant company on the life of T. L. Lay-
den, plaintiff's intestate.

In apt time, namely, before defendant's time for answer-
ing had expired, the defendant company, by its attorneys,
moved to remove this action into the Circuit Court of the
United States in and for the Fourth District of Western
North Carolina, and presented a petition and bond, copies of
which are herewith attached and made a part of this case on

appeal. The motion for removal was made upon the ground that the defendant company was, at the beginning of this action and at the time of the filing of the said petition, a non-resident of the State of North Carolina, and that the plaintiff was at the said time a resident of the said State; and upon the further ground that it was a corporation organized by Act of the Congress of the United States, and hence that the controversy arose under the Constitution and laws of the United States (28 U. S. Statutes-at-Large, 96, ch. 119), approved June 29, 1894.

This motion was resisted by plaintiffs, upon the grounds that the defendant company was a corporation under the laws of the State of North Carolina, having theretofore amended her complaint by leave of Court, setting forth this fact, which complaint was not verified.

This motion his Honor refused, upon the ground that the defendant had become a domestic corporation under the Act known as the "Craig Act;" and from this order refusing to order the removal of this cause into the Circuit Court of the United States, defendant excepted and appealed to the Supreme Court.

It appears that in apt time the defendant filed the following petition for removal, together with the bond required by law: "Comes the defendant, Supreme Lodge Knights of Pythias, sued herein as the Endowment Rank Knights Pythias, and shows to the Court:

"That this suit is brought by the plaintiffs to recover the sum of $3,000 upon a certificate of membership in the Endowment Rank Knights of Pythias, issued by the defendant, in which said certificate were named the said plaintiffs as beneficiaries, and is wholly of a civil nature; that the matter and amount in dispute in said suit exceeds, exclusive of interest and costs, the sum or value of $2,000, all of which will more fully appear by the complaint in said suit, filed July 5,

1900, which is hereby referred to and made a part hereof; that the said suit is one arising under the laws of the United States; that the said Supreme Lodge Knights of Pythias is, and was at the time of the commencement of said suit, a non-resident of this State and a corporation organized and existing under the Act of Congress, to-wit, the Act approved May 5, 1870, entitled "An act to provide for the creation of corporations in the District of Columbia by general law" (16 U. S. Statutes, page 98), and the amendments thereto, and an act was passed, "An act to incorporate the Supreme Lodge Knights of Pythias," approved June 29, 1894 (28 Stat. of L., 96, ch. 119). That the said certificate was so issued by the defendant, under and by virtue of authority derived from and under said acts of Congress; and that the same, and acts done under and in pursuance thereof, are involved in this action. That the plaintiff, at the time of the commencement of this action, was, and still is, a resident and citizen of the State of North Carolina. That the time within which the said Supreme Lodge Knights of Pythias is required by the laws of the State of North Carolina, and the rules and practice of said court, to answer or plead to said complaint in said suit, has not yet expired. That said Supreme Lodge Knights of Pythias makes and files herewith a bond in the sum of $500, with good and sufficient surety, for its entering into the Circuit Court of the United States in and for the Fourth District of Western North Carolina, on the first day of its next session, a copy of the record in this suit, and for paying all costs that may be awarded by said Circuit Court, if it shall hold that this suit was wrongfully or improperly removed thereto. Wherefore, the Supreme Lodge Knights Pythias prays this Court to proceed no further herein, except to accept this petition and bond, and to make an order requiring said defendant to enter and file a copy of the record.

herein in said Circuit Court of the United States, as required by law."

The complaint is as follows:

The plaintiffs complaining of defendants, allege:

1. That in the year 1894, at and in the county and State aforesaid (Davidson County, North Carolina), T. F. Layden, deceased, of Lexington, N. C., took of the defendants a duly executed policy of insurance, No. 49,165, whereby they agreed to pay the sum of $3,000, at his death, to 'Minnie C. Layden, his wife and surviving children,' and said T. F. Layden paid all the premiums and dues regularly for a period of six years, and up to his death, and fully complied with all the conditions of said policy.

2. That the plaintiff, Minnie C. Layden, was the wife therein referred to, and E. H. Layden, for whom Minnie C. Layden, his mother, is guardian, is the only child surviving, or otherwise, of said T. F. Layden, insured.

3. That said T. F. Layden died in Lexington, N. C., on the 15th day of January, 1900, while in good standing, and due notice and proof of death were made to the defendants, insurers, on blanks provided by them as the policy required.

4. That the defendants refused, and still refuse to pay the beneficiaries herein recited, the $3,000 due on and by said policy, on the 15th day of January, 1900, and said amount is still due and unpaid to plaintiffs.

Wherefore, the plaintiffs demand judgment against the defendants:

1. For the sum of $3,000 with interest from the 15th day of January, 1900, till paid.

2. For such other and further relief as the plaintiffs may be entitled to in law and equity.

3. For the costs of this action.

The amendment to the complaint is in the following words:

"2. That the defendant company herein sued and against

whom this plaintiff asks relief is a corporation duly formed under and by authority of the laws of the State of North Carolina, doing business in said State as an insurance company."

From an order refusing to remove this cause to the Federal Court, the defendant appealed.

*S. E. Williams,* for the plaintiff.
*Walser & Walser,* for the defendant.

DOUGLAS, J., after stating the facts. The point directly presented to us is whether a corporation originally organized under the laws of the United States, but which has become a domestic corporation of this State, under the provisions of ch. 62 of the Public Laws of 1899, can remove a cause into the Circuit Court of the United States when expressly sued as a domestic corporation. That such a corporation, originally organized under the laws of another State, can not do so, is settled in the recent case of *Debnam v. Telephone Company,* 126 N. C., 831, which is adopted as a part of this opinion. Whether the present defendant comes within the operation of that decision, is the question before us. We think it does.

We are not prepared to say that the United States are on a level in all respects with the States, which are considered as foreign jurisdictions. The National Government, while a distinct sovereignty, is not a foreign State, because it is composed of all the States, and is equally at home in all of them. The line of demarkation between State and Federal authority does not depend upon territorial limits, but entirely upon the subject-matter of legislation or judicial construction as defined by the Constitution of the United States. This doctrine applies to the Federal Government only in its relation to the States, as it is controlled by principles essentially dif-

ferent when dealing with the District of Columbia, or other territories of the United States. Congress is the Supreme law-making power of all territories, certainly unrestrained by any local authority, and it would seem but indefinitely so even by the Federal Constitution. In such cases it seems to us that Congress acts, not in its national capacity, but as a local Legislature, and its acts, unless otherwise clearly expressed, are confined in their binding operation to the jurisdictions for which they were originally intended. We therefore think that corporations, chartered primarily to do business in the District of Columbia, have no right, beyond that of comity, to operate in any of the States, unless expressly authorized by their charters. They therefore stand on the same footing as corporations of other States so far as the Act of 1899 is concerned. By that act the right of comity was withdrawn from them in common with all other *foreign* corporations, and they were forbidden to exercise their corporate powers within this State, unless they became domestic corporations. It is admitted that the defendant domesticated under that act, and as we have held that the legal effect of the act *"was to charter, and not to license,"* we are compelled to hold that the defendant has no right to remove the case at bar into the Federal Court.

We can find no provision in the Constitution of the United States directly authorizing the formation of corporations by the Federal Government. That it has the implied authority to do so whenever necessary and proper for carrying into effect its express powers, was finally settled by the case of *McCulloch v. Maryland,* 4 Wheat., 316, but it is interesting to note the limitations placed upon such authority in the opinion of the Court. Chief Justice *Marshall,* speaking for the Court, says, on page 411: "The power of creating a corporation is never used for its own sake, but for the purpose of effecting something else. No sufficient reason is

therefore perceived, why it may not pass as incidental to those powers which are expressly given, if it be a direct mode of executing them." And again, on page 421, alluding to the fact that the Constitution gave to Congress no express authority to create corporations, he says: "Had it been intended to grant this power (of creating corporations), as one which should be distinct and independent, to be exercised in any case whatever, it would have found a place among the enumerated powers of the government. But being considered merely as a means, to be employed only for the purpose of carrying into execution the given powers, there could be no motive for particularly mentioning it."

Again, the great Chief Justice, speaking for the Court, in *Osborn v. Bank,* 9 Wheat., 738,, 860, says: "The bank is not considered as a private corporation, whose principal object is individual trade and individual profit; but as a public corporation, created for public and national purposes. That the mere business of banking is, in its own nature a private business, and may be carried on by individuals or companies having no political connection with the government, is admitted; but the bank is not such an individual or company. It was not created for its own sake, or for private purposes. It has never been supposed that Congress could create such a corporation. The whole opinion of the Court, in the case of *McCulloch v. The State of Maryland,* is founded on and sustained by, the idea that the bank is an instrument which is 'necessary and proper for carrying into effect the powers vested in the government of the United States.'"

These questions become important in construing the opinion in *Union Pa. Railway Co. v. Myers,* 115 U. S., 1, wherein the Court says: "We are of opinion that corporations of the United States, created by and organized under Acts of Congress, *like the plaintiffs in error in these cases,* are entitled as such to remove into the Circuit Court of the United States

suits brought against them in the State courts, under and by virtue of the Act of March 3, 1875, on the ground that such suits are suits 'arising under the laws of the United States.' We do not propose to go into a lengthy argument on the subject; we think that the question has been substantially decided long ago by this Court. The exhaustive argument by Chief Justice Marshall in the case of *Osborn v. The Bank of the U. S.,* 9 Wheat., 817, 828, delivered more than sixty years ago, and always acquiesced in, renders any further discussion unnecessary to show that a suit by or against a corporation of the United States is a suit arising under the laws of the United States."

The words "like the plaintiffs in error," which we have italicised, taken in connection with the limitations in the cited opinion of *Osborn v. Bank,* would indicate that there might be other classes of corporations organized under the authority of Congress that would not have the inherent power of removal in all cases. Such, for instance, would be the corporations authorized by Congress under its special powers of legislation for territories directly under its control, and not intended to be used in any way as governmental agencies or in furtherance of Interstate Commerce. The petitioner at bar, whether viewed as a life insurance company or as a fraternal organization, is in no sense a governmental agency, and we do not think that life or fire insurance can be brought within the definition of Interstate Commerce. We think that the petitioner was incorporated by Congress to operate primarily in the District of Columbia, with only such incidental powers outside of said District as it might have by the law of comity. Therefore, we think that it comes within the *principle* of the decision in *Oregon Short Line Railway v. Skottowe,* 162 U. S., 490, in which the Court says, on page 497: "But even if the Court were obliged, under the allegations of the plaintiff's complaint, to take judicial notice of

the defendant company's charter, no act of Congress was pointed out under which it was acting when operating the railroad in the State of Oregon. So far as appears, the defendant company existed and was doing business in the State of Oregon solely under the authority of that State, whether express or permissive. The two Acts of Congress referred to do not disclose any intention on the part of Congress to confer powers or right to be exercised outside of the territories named therein." Such a principle relating to railroads, which are admittedly instruments of Interstate Commerce, would apply with even greater force to a corporation having no such character.

An examination of the acts under which the petitioner was incorporated will clearly show its local character. It was originally incorporated, as shown by its petition, under ch. 80 of 18 U. S. Statutes-at-Large, entitled "An act to provide for the creation of corporations in the District of Columbia by general law," approved May 5, 1870. It was again incorporated by special act, approved June 29, 1894, 28 U. S. Statutes-at-Large, ch. 119. The first section of this act reads as follows: "That George B. Shaw (and others), officers and members of the Supreme Lodge Knights of Pythias, and their successors, be and they are hereby incorporated and made a body politic and corporate, in the *District of Columbia,* by the name of 'The Supreme Lodge Knights Pythias,' and by that name it may sue and be sued, plead and be impleaded in any court of law or equity, and may have and use a common seal, and change the same at pleasure, and be entitled to use and exercise all the powers, rights and privileges incidental to fraternal and benevolent corporations *within the District of Columbia*" Neither of these acts give any authority, either expres sor implied, to the petitioner to exercise any of its corporate powers outside of the District of Columbia. We are not now dealing with the

right of comity, for that has been expressly withdrawn by the State of North Carolina by the Act of February 10, 1899. Nor do we mean to treat the petitioner as a *citizen* of the District of Columbia, but as a Federal corporation, created for local and not for national purposes. As such, it has no inherent right to do business in this State in violation of our statute.

It seems to have recognized this fact, and took advantage of the provisions of the statute to become a "domestic corporation," as therein provided. Its status as such is settled by the decision of this Court in *Debnam v. Telephone Co.,* *supra.* Acting, therefore, as a domestic corporation, the only capacity in which it could then lawfully act, at the time this cause of action accrued, and sued only as a domestic corporation, we see no legal grounds for removal.

We are not inadvertent to the cases of *This Petitioner v. Hill,* 76 Fed. Rep., 468, and *This Petitioner v. England,* 94 Fed. Rep., 369, in which it is held that this petitioner has the right of removal to the Federal Courts; nor to the case of *This Petitioner v. Kalinski,* 163 U. S., 289, in which the Court entertained the appeal. In the last case the question of jurisdiction does not seem to have been raised, nor do any of the cases refer to the petition in its relation as a domestic corporation, the essential question in the case at bar.

We have considered the line of cases holding the doctrine that, in all cases of removal, the jurisdiction of the subject matter of the action must appear on the face of the complaint as filed by the plaintiff, and can not be injected into the record by the defendant in making out his case for removal. *Metcalf v. Watertown,* 128 U. S., 586; *Tennessee v. Bank,* 152 U. S., 454; *Chappell v. Waterworth,* 155 U. S., 102; *Land Co. v. Brown,* 155 U. S., 488; *Railway Co. v. Skottowe,* 162 U. S., 490; *Railway Co. v. Texas,* 170 U. S., 226; *Houston, etc., R. Co. v. Texas,* 177 U. S., 66. As we have

some doubt of the application of these cases to that at bar as precluding an inquiry as to the origin of its incorporation, in view of the decision in *Railway v. Cody,* 166 U. S., 606, and as a determination of the point is not necessary to our decision, we prefer to rest our opinion on the grounds already stated.

As we said in Debnam's case, we must say now: We are of the opinion that as the defendant has become a domestic corporation of the State of North Carolina, and in contemplation of law a citizen thereof, and as the plaintiff has sued the defendant as a North Carolina corporation, upon a cause of action which discloses no Federal question whatever, the case can not be removed into the Circuit Court of the United States, therefore, the judgment of the Court below is

Affirmed.