# Wythebille

## LOUDOUN NATIONAL BANK OF LEESBURG V. CONTINENTAL TRUST COMPANY, JOHN S. BRYAN, RECEIVER, INTERVENER.

June 13, 1935.

Present, Campbell, C. J., and Holt and Hudgins, JJ.

The opinion states the case.

*Edwin E. Garrett, Leake & Buford* and *Littleton M. Wickham,* for the plaintiff in error.

*Charles Pickett* and *Barbour, Garnett & Pickett,* for the defendants in error.

HOLT, J., delivered the opinion of the court.

The issue here is in the jurisdiction of the State court.

The Loudoun National Bank is the holder and owner of a note for $15,000, subject to certain credits, of date May 15, 1930, executed by the Continental Trust Company, a

corporation chartered under the laws of the District of Columbia.

On March 15, 1932, the bank filed a petition for attachment in the Circuit Court of Fauquier county in which it charged that the trust company was the owner of certain real estate and tangible personal property there situated. Thereupon this attachment was duly levied as shown by the sheriff's return of date March 27, 1933.

On April 5, 1933, John S. Bryan, receiver for the trust company, entered a special appearance for the purpose of protesting the jurisdiction of the State court. He set out the fact that the trust company was a corporation organized under authority of an act of Congress to do business in the District of Columbia, and that pursuant to authority conferred upon him by an act of Congress the acting Comptroller of Currency did, on the 28th of February, 1933, take possession of the trust company and appoint one Joseph A. Gamble receiver thereof. Gamble resigned, his resignation becoming effective on March 9, 1933, and on the 8th of March, 1933, the said acting comptroller appointed John S. Bryan receiver, said appointment to take effect at the close of business on the 9th of March, 1933. Bryan qualified and gave the necessary bond. He contends that he became thus vested with title to the real estate attached and is charged with the duty of administering the assets of the trust company for the benefit of all its creditors, and that for these reasons the State court is without jurisdiction, and this contention the trial court upheld.

The right of a domestic creditor in appropriate proceedings to apply the assets of a foreign insolvent corporation found within his State to the payment of his debt is settled by the recent case of *E. W. Clark, Commissioner of Insurance of the State of Iowa, as Receiver of Federal Surety Company* v. *Harry O. Williard, W. W. Wheaton, and C. W. Hay, as Trustees of Gordon Campbell-Kevin Syndicate,* 294 U. S. 211, 55 S. Ct. 356, 79 L. Ed. ——, decided by the United States Supreme Court on February 4, 1935.

The facts in that case are set out in *Clark* v. *Williard,*

292 U. S. 112, 54 S. Ct. 615, 616, 78 L. Ed. 1160. The Federal Surety Company was an insurance company organized under the laws of Iowa and had received authority to do business in Montana. In September, 1931, the State of Iowa sued it alleging its insolvency and praying for a decree of dissolution and a distribution of its assets. An Iowa statute (Code 1931, section 8613-c1) provides that "the commissioner of insurance henceforth shall be the receiver and/or liquidating officer for any insurance company, association or insurance carrier."

"On September 25, 1931, a decree in favor of the State was entered by default, and an amended decree on December 22nd of the same year. By these decrees the corporation was adjudged to have been dissolved on September 25, 1931; the commissioner of insurance, E. W. Clark, was adjudged to be 'the successor to said corporation,' and as such to hold 'title to all property owned by Federal Surety Company at the time it so ceased to exist'; and liquidation was decreed in accordance with the statute."

Before the date of dissolution the Montana creditors brought suit. Its first trial resulted in a non-suit which was reversed on appeal. After the decree of dissolution it came on to be heard again and on May 10, 1932, judgment in favor of the plaintiffs was entered by default, and on May 24, 1932, leave was given them to issue execution. This execution was junior in date to the Iowa decree of dissolution.

The Supreme Court, in its opinion of February 4, 1935 (294 U. S. 211, 55 S. Ct. 356, 357, 79 L. Ed. ——), said that there was no uniformity prevailing among States where liquidators and creditors compete but that it was a State and not a Federal question.

"Every State has jurisdiction to determine for itself the liability of property within its territorial limits to seizure and sale under the process of its courts."

"The Supreme Court of Montana [*Mieyr* v. *Federal Surety Co.*, 97 Mont. 503, 34 P. (2d) 982] has reconsidered the conflicting claims of liquidator and creditors in the light of

that decision. It has held (the Chief Justice and an Associate Justice dissenting) that the local policy of the State permits attachments and executions against insolvent corporations, foreign and domestic; that the writs will not be halted though the effect of the levy may be waste or inequality; and that this rule will prevail against a statutory successor, clothed with title to the assets, just as much as against the corporation itself or the trustees upon dissolution or a chancery receiver."

To the same effect is *Zacher* v. *Fidelity Trust and Safety-Vault Co.*, 106 Fed. 593, 599, Circuit Court of Appeals, opinion by Judge Lurton.

The Newport News and Mississippi Valley Company was a Connecticut corporation with a roving charter. It leased the railroad of the Chesapeake, Ohio and Southwestern Company, a Kentucky corporation, whose property lay within the States of Kentucky and Tennessee. The Connecticut corporation, on March 16, 1894, by vote of its stockholders, decided to wind up its affairs. Application was made to a Connecticut court for the appointment of a receiver to take charge of the assets of the company under the provisions of a statute of that State. Zacher was appointed receiver and qualified on April 13, 1894. On the 14th of April, 1894, the president of the company executed to him a deed of general assignment conveying to him, as receiver, all the property of the corporation wherever situated, which deed was ratified by vote of the directors on May 8, 1894. On the following day it was acknowledged for registration and delivered to Zacher. Crouch, a Kentucky creditor, levied his attachment on May 1, 1894, a date subsequent to Zacher's appointment as a receiver but antecedent to the date of the delivery of the deed of assignment. An attachment of the Fidelity Trust and Safety-Vault Company was levied on May 11, 1894, a date subsequent to the deed of general assignment. Both of these attachments were upheld in Kentucky and were upheld by the Circuit Court of Appeals which said: "It would be a scandal upon the administration of justice if two co-ordinate courts, administering the same

law, should reach a different conclusion upon the same facts." Certiorari was denied. (*Zacher* v. *Fidelity Trust and Safety-Vault Co.*), 181 U. S. 621, 21 S. Ct. 924, 45 L. Ed. 1032. See also, 53 C. J. 399.

Between those by whatever name, who, for the purpose of winding up its affairs, take over the assets of an insolvent corporation and its creditors, wherever they may be, the rights of such creditors are to be measured by the laws of their State, and not by the laws of the State of the insolvent corporation.

This settled principle must be applied in the instant case unless some distinction arises out of the fact that the trust company is a District of Columbia corporation whose affairs are being wound up by a receiver appointed by the Comptroller of Currency.

It becomes necessary to inquire into the status and character of corporations chartered in the District of Columbia, and this, in turn, makes it necessary for us to consider the status of the District itself. It is a Federal territory and as now constituted, was taken from the State of Maryland. Although it is a territory it differs from others in many respects. Ordinarily "the territorial state is one of pupilage at best." *Nelson* v. *United States* (C. C.) 30 Fed. 112, 115. "A territory under the Constitution and laws of the United States is an inchoate state." *Ex parte Morgan* (D. C.) 20 Fed. 298, 305. The District of Columbia is the permanent seat of the Federal government and is not a State, present or prospective.

"In dealing with the District, Congress possesses the powers which belong to it in respect of territory within a State, and also the powers of a State. * * * 'it possesses a dual authority over the District and may clothe the courts of the District not only with the jurisdiction and powers of Federal courts in the several States but with such authority as a State may confer on her courts.'" *O'Donoghue* v. *United States,* 289 U. S. 516, 53 S. Ct. 740, 748, 77 L. Ed. 1356.

In that case is found a comprehensive discussion of this

subject. See also, *State* v. *Briggs,* 116 Ind. 55, 18 N. E. 395, and *Layden* v. *World Endowment Rank,* 128 N. C. 546, 39 S. E. 47.

 Congress may charter or authorize all corporations which it deems necessary whenever any Federal interest is involved. In addition to this exercise of Federal power it may authorize the formation of corporations whose purpose is purely local. Economic considerations might induce District citizens to charter a lumber company which might own timberlands in Virginia. Such a corporation would be affected with no Federal interest and charged with no Federal duty. Authority for its creation rests in the fact that the District, in relation to such matters, has the power of a State, and the corporation itself, and those who deal with it would be affected by the rights and liabilities generally of State corporations. No special Federal rights attach to a corporation purely private merely because it is chartered in the District.

The Continental Trust Company contends that it is a "national bank in the broad sense of the term" while the Loudoun bank contends that it is a trust company pure and simple and as such, serves no Federal purpose and is affected with no Federal interest.

No one questions the power of the Federal government to establish a bank and to give to it such powers as may be deemed necessary. *M'Culloch* v. *State of Maryland,* 4 Wheat. 316, 4 L. Ed. 579. Has that power been exercised?

 A bank is not a trust company and cannot do those things for which trust companies are ordinarily formed unless proper authority is granted by some statute or by some special charter provision. And by the same token trust companies, unless so empowered, cannot do a banking business as incident to its major purpose. In concrete terms one is a bank and one is a trust company.

 "The primary and ordinary conception of a trust company is a corporation to take and administer trusts. The fact that a trust company is permitted by its charter to exercise some of the functions of a bank does not constitute

it a 'banking institution,' nor does the possession of certain trust privileges transform a banking corporation into a 'trust company.' " 7 Words and Phrases, (3d Series) page 648, citing *People* v. *National Security Co.*, 189 App. Div. 38, 177 N. Y. S. 838.

Section 715 of chapter 18, Code of the District of Columbia, 1924 (D. C. Code 1929, T. 5, section 341), tells us for what purpose trust, loan, mortgage and certain other corporations may be formed. They are as follows:

"First. A safe deposit, trust, loan, and mortgage business.

"Second. A title insurance, loan, and mortgage business.

"Third. A security, guarantee, indemnity, loan and mortgage business: *Provided*, That the capital stock of any of said companies shall not be less than one million dollars, and that any of said companies may also do a storage business when their capital stock amounts to the sum of not less than one million two hundred thousand dollars."

This Code, sections 721 and 722 (D. C. Code 1929, T. 5, sections 348, 349), tells us in detail just what this company may do. It shall have power—

"First. To make contracts.

"Second. To sue and be sued, plead and be impleaded, in any court as fully as natural persons.

"Third. To make and use a common seal and alter the same at pleasure.

"Fourth. To loan money.

"Fifth. When organized under subdivision one of section seven hundred and fifteen of this subchapter, to accept and execute trust of any and every description which may be committed or transferred to them, and to accept the office and perform the duties of receiver, assignee, executor, administrator, collector of estate or property of any decedent, guardian of the estate of minors with the consent of the guardian of the person of such minor, and committee of the estates of lunatics and idiots whenever any trusteeship or any such office or appointment is committed or transferred to them, with their consent, by any person,

body politic or corporate, or by any court in the District of Columbia; and all such companies organized under the first subdivision of section seven hundred and fifteen of this subchapter are further authorized to accept deposits of money for the purposes designated herein, upon such terms as may be agreed upon from time to time with depositors, and to act as agent for the purpose of issuing or countersigning the bonds or obligations of any corporation, association, municipality, or State, or other public authority, and to receive and manage any sinking fund on any such terms as may be agreed upon, and shall have power to issue its debenture bonds upon deeds of trust or mortgages of real estate to a sum not exceeding the face value of said deeds of trust or mortgages, and which shall not exceed fifty per centum of the fair cash value of the real estate covered by said deeds or mortgages, to be ascertained by the Comptroller of the Currency; but no debenture bonds shall be issued until the securities on which the same are based have been placed in the actual possession of the trustee named in the debenture bonds, who shall hold said securities until all of said bonds are paid; and when organized under the second subdivision of section seven hundred and fifteen of this subchapter said company is authorized to insure titles to real estate and to transact generally the business mentioned in said subdivision; and when organized under the third subdivision of section seven hundred and fifteen of this subchapter said company is hereby authorized in addition to the loan and mortgage business therein mentioned, to secure, guarantee, and insure individuals, bodies politic, associations, and corporations against loss by or through trustees, agents, servants, or employees, and to guarantee the faithful performance of contracts and obligations of whatever kind entered into by or on the part of any person or persons, association, corporation, or corporations, and against loss of every kind: *Provided,* That any corporations formed under the provisions of this subchapter when acting as trustee shall be liable to account for the amounts actually earned by the moneys held by it in trust

in addition to the principal so held; but such corporation may be allowed a reasonable compensation for services performed in the care of the trust estate."

"Section 722. May be Appointed Trustee, Executor, and So Forth.—In all cases in which application shall be made to any court in the District of Columbia, or wherever it becomes necessary or proper for said court to appoint a trustee, receiver, administrator, collector, guardian of the estate of a minor, or committee of the estate of a lunatic, it shall and may be lawful for said court (but without prejudice to any preference in the order of any such appointments required by existing law) to appoint any such company organized under the first subdivision of section seven hundred and fifteen of this subchapter, with its assent, such trustee, receiver, administrator, collector, committee, or guardian, with the consent of the guardian of the person of such minor: *Provided, however,* That no court or judge who is an owner of or in any manner financially interested in the stock or business of such corporation shall commit by order or decree to any such corporation any trust or fiduciary duty."

Said section 715 tells us that these corporations may be formed "for the purpose of carrying on in the District of Columbia" the business contemplated.

None of these provisions regulating trust companies appear in any general Federal statute. They are a part of the organic law of the District, are written into its Code and are local to the District. That is to say, it is local legislation. There is no more reason for giving to a District trust company extraterritorial power than there would be to one had it been chartered in Denver or in Honolulu.

This is a power given to national banks: "Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion;

by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title [chapter]." U. S. C. A., Title 12, ch. 2, sec. 24.

Among characteristic rights given is the unrestricted power to receive deposits and to discount notes, bills, and other evidences of debt. Trust companies are given no power to discount paper. Deposits are to be used for purposes designated, which we have already stated, and upon such terms as may be agreed upon from time to time with depositors. Other code provisions affecting banks nowhere refer to trust companies.

We think it plain from these extracts from the District Code that this trust company is not "a national bank in the broad sense of the term" and is not a bank at all but a trust company, authorized to do business in the District of Columbia with such powers as it would have had the District formally been vested with the powers of a State. If this be its status fixed by the organic law of the District it is as local as any other business corporation. This trust company is an instrumentality of the District that serves no Federal purpose and there is nothing national about it. A State bank in Virginia is a foreign corporation in Maryland.

It is true that section 720 of the District Code (D. C. Code 1929, T. 5, section 347) gives to the comptroller "power, when in his opinion it is necessary, to take possession of any such company, for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks." But this should be construed in connection with the character of business which these trust companies may do which is business in the District of Columbia. Possibly this may apply to personalty on the principle of *mobilia sequuntur personam,* but it would be a strained construction to hold that it vested title in the Comptroller to real property in a distant State.

Congress might have placed in the Comptroller this power over every insolvent corporation chartered in the District

but that would not have changed the distinction between those chartered for some local purpose and those affected with some Federal interest. Moreover if there had been any purpose to thus pass interest it should have been unequivocally expressed. *Cohens* v. *Virginia,* 6 Wheat. 264, 5 L. Ed. 257.

■ A receiver, whether he be statutory or chancery, does not succeed to the title of his insolvent corporation. That remains in the company. His duty is to administer its assets in such manner as the law provides. *Rosenblatt* v. *Johnston,* 104 U. S. 462, 26 L. Ed. 832; *United States* v. *Weitzel,* 246 U. S. 533, 38 S. Ct. 381, 62 L. Ed. 872. Nor does his appointment dissolve the corporation. *Chemical National Bank* v. *Hartford Deposit Co.,* 161 U. S. 1, 16 S. Ct. 439, 40 L. Ed. 595.

■ An order appointing a receiver of realty has no extraterritorial operation and cannot affect the title to real property which is located beyond the jurisdiction of the court by which the order was made. *Booth* v. *Clark,* 17 How. 322, 15 L. Ed. 164.

His power cannot extend beyond the territorial jurisdiction of the court which gave him office. *Primos Chemical Co.* v. *Fulton Steel Corp.* (D. C.) 254 Fed. 454.

It is said, however, that even conceding that he is not invested with title the right of a creditor to attach is specifically denied by a statute which reads:

"All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall

be utterly null and void; and no attachment, injunction or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court." U. S. C. A., Title 12, ch. 2, sec. 91.

Of course if this section applies to the Continental Trust Company, that ends this case.

Section 37 of said chapter 2, Title 12, U. S. C. A., tells us that "The provisions of this chapter, which are expressed without restrictive words, as applying to 'national banking associations,' or to 'associations,' apply to all associations organized to carry on the business of banking under any act of Congress."

We have seen that trust companies are not banks *proprio vigore*. One cannot visualize an association organized to carry on the business of banking which is without power to discount paper and which can receive deposits only for certain designated purposes and under special arrangements with depositors.

This conclusion is strengthened by the fact that Congress, under an emergency act of March 4, 1933, 47 Stat. 1564, undertook to make certain statutes governing national banks apply to trust companies. It reads: "The provisions of section 5205 of the Revised Statutes of the United States as amended (U. S. C., Title 12, ch. 2, sec. 55); sections 5234, 5235, and 5236 of the Revised Statutes of the United States as amended (U. S. C. A., Title 12, ch. 2, secs. 192, 193, and 194); the Act of March 29, 1886 (ch. 28, secs. 1, 2, and 3; 24 Stat. 8; U. S. C., Title 12, ch. 2, secs. 198, 199, and 200); the Act of February 25, 1930 (ch. 58, 46 Stat. 74; U. S. C., Title 12, ch. 2, sec. 67); the Act of June 30, 1876 (ch. 156, secs. 1, 2, and 3; 19 Stat. 63; U. S. C., Title 12, ch. 2, secs. 191, 65, and 197); and section 5210 of the Revised Statutes of the United States (U. S. C., Title 12, ch. 2, sec. 62) are extended to apply to any bank, savings bank, or trust company organized, hereafter organized, or doing a banking business in the District of Columbia and to the shareholders of such institutions, ex-

cept as limited by the provisions of paragraph (b) of this section: *Provided, however,* That the provisions of section 713 of the Act of March 3, 1901, entitled 'An act to establish a Code of law for the District of Columbia' (D. C. Code, Title 5, sec. 298) [section 298 of Title 5 of this Code], as amended, shall not be construed to be repealed by this act [section] but shall have application to the banks, savings banks, savings companies, other than building associations, and trust companies embraced within this act [section]." (47 Stat. 1566, section 4, D. C. Code Supp. I, 1933, section 300a, subd. (c).

Plainly there is here given to the Comptroller and to his receiver certain powers to wind up the affairs of insolvent local trust companies which they had theretofore been given over national banks so circumstanced. But this power might, with equal propriety, have been conferred upon them whenever it became necessary to administer for the benefit of its creditors any other corporation chartered to do business in the District. This power had to be conferred upon someone and is not changed by the character of the individuals called upon to exercise it, and it did not change the character of the corporations thus brought, for the purposes named, under their control.

When Congress, in its judgment, designated those statutes which it deemed applicable, section 91 was omitted. Certainly theretofore its applicability to trust companies was an open question, and it is not likely that it would have been omitted unless Congress was of the opinion that it did not apply.

If the conclusions which we have reached be sound the issue here drifts down to this: Can a domestic creditor in Virginia, through appropriate legal proceedings, apply upon his debt the assets of an insolvent foreign corporation whose affairs are being administered by a receiver when the assets seized are in Virginia?

We have seen, under authority of *Clark* v. *Williard, supra,* that this is a question which the State courts must answer. As was there said, "Every State has jurisdiction to deter-

mine for itself the liability of property within its territorial limits to seizure and sale under the process of its courts."

In *Bockover* v. *Life Association,* 77 Va. 85, it appears that certain choses in action were attached that belonged to a Missouri corporation whose affairs were in the hands of a receiver. This court dismissed the attachment and said that it was a "well settled general rule, that a transfer of moveable property, good by the laws of the owner's domicil, is valid, wherever else the property may be situate, and should prevail."

Title to land in Virginia can only pass in the manner provided for in Virginia law. Minor, Conflict of Law, section 11, and section 117. If this were not true our registry statutes would not give us the protection which they are designed to afford. Deeds are void as to creditors until admitted to record in the proper court. Code, section 5194, amended by Acts 1922, chapter 285, and sections 5195, and 5197.

In section 163 of our Constitution, provision is made for attachment of property belonging to foreign corporations.

"The property, within this State, of foreign corporations shall always be subject to attachment, the same as that of non-resident individuals; and nothing in this section shall restrict the power of the General Assembly to discriminate against foreign corporations whenever, and in whatsoever respect, it may deem wise or expedient."

■ Appointment in Virginia of a receiver does not affect title. *Harman* v. *McMullin,* 85 Va. 187, 7 S. E. 349; *Davis* v. *Bonney,* 89 Va. 755, 17 S. E. 229. And this is true even though the receiver be an officer of the State court.

■ Title in Virginia passes by deed, by will, by descent and by adversary possession. No one of these sources of title appear here. It was, and is still, in the Continental Trust Company. There is no record of its transfer and it is subject to attachment for debts due by that corporation, to the same extent that it would be if the creditor were an individual and citizen of the District of Columbia.

It follows that this attachment must be sustained as to the real estate, and to that extent the judgment of the Circuit Court of Fauquier county is reversed.

*Reversed.*